Hobjstblower, C. J.
On the fourth day of March 1835, the following executions were delivered to the sheriff' of Salem county viz. one at the suit of Charles Wood against Thomas B. Wood for one thousand seven hundred and seventy-five dollars and twenty-six cents, another against the same defendant at the suit of Hannah M. Wood for two hundred and twenty-five dollars and eighty-four cents and another at the suit of Charles Wood against Thomas B. Wood and Isaiah Wood, for ten hundred and twenty-five dollars and fifteen cents.
The judgments on which these several executions were founded, had all been entered up by confession on the day preceding the one, on which the executions were delivered to the sheriff All the executions were indorsed by William N. Jeffers as attorney for the plaintiffs therein named. The person who put them in the hands of the sheriff, told him that Mr. Jeffers would give him directions about them. Soon after,'and on the same day, the sheriff saw Mr. Jeffers and enquired of him, what course was to be taken in relation to the collection of the money on the executions ? Mr. Jeffers said, that “ that matter was not yet determined;” but told the sheriff “ not to shut up the store, as Charles Wood did not wish that to be done, and that the executions would be stayed, or he expected they would be stayed.” The sheriff upon reflection, not feeling it safe to let the matter *256 rest in that way, requested Mr. Jeffers, to give him a slay, upon the executions. This he declined doing, but told the sheriff that in a day or two, in all probability, he would issue an execution against Thomas B. Wood at the suit of Grant Gibbons, which would supersede the necessity of a stay. The sheriff however went that same evening to Allowaystown, and levied upon the estate real and personal of Thomas B. Wood, and afterwards made an inventory which he returned with the executions. The several executions were numbered, that of Charles Wood v. Thomas B. Wood being marked No. 1. and Mr. Jeffers told the sheriff they were to have priority according to the number they bore.
On the 6th of March, two days after the delivery to the sheriff of the above stated executions — Mr. Jeffers delivered to him an execution against Thomas B. Wood, at the suit of Grant Gibbons; and shortly after that, the sheriff received a letter from Thomas B. Wood, the defendant,.inclosing written stays of the executions against him at the suit of Charles Wood, and also of Hannah M. Wood; the former signed by Charles Wood and the latter by Hannah M. Wood. The writing signed by Charles Wood bears Hate the 14th of March 1835, and directs the sheriff to stay all further proceedings against Thomas B. Wood, on the executions in his favour and on the one in favour of Hannah M. Wood, until further orders from him the said Charles Wood. The one signed by Hannah M. Wood is to the same effect so far as relates to her execution, and directs the sheriff to stay all further proceedings, until further orders from her.* The sheriff soon after received similar written instructions from Grant Gibbons.
*257 In consequence of these instructions, the sheriff suspended all proceedings on the said executions, and suffered the property to remain in the possession of the defendant Wood and under his control, until as herein after stated.
On the 26th February 1836, the execution of William Cook was delivered to the sheriff with instructions to proceed upon it immediately. — Two days after that, Charles Wood directed the sheriff to proceed on his executions but it does not appear that Gibbons ever countermanded his orders to the sheriff. On the 21st. of March following, the sheriff sold under all the executions, not only the property which he had specifically levied on and inventoried under the first executions, but also the store goods and several other articles which he had levied upon uuder Cook’s execution only, besides much other property which he had not levied on under any of the executions. Bat cattle and other property to a considerable amount in value, which were levied under the first executions — were not sold, because, as the sheriff says, he could not find them; they having been sold or disposed of by the defendant Wood himself. The sheriff also sold a quantity of grain and grass growing on the land in the Summer of 1836, under the first executions, although those executions had been returned with inventories annexed, in 1835. In December 1835, and consequently before the sale, another execution against Thomas B. and Isaiah Wood at the suit of Morris Hancock, was delivered to the sheriff — under this, however he made no-levy, and how it was returned, does not appear.
The whole amount of sales, made by the sheriff was not sufficient to satisfy the first four executions but much more than enough to pay off'the execution in favour of Charles Wood; and the question is, who shall be first paid ? Charles Wood or William Cook?
The following propositions I presume will not be controverted :
1st. The sheriff cannot seize or levy upon any property, real or personal uuder an execution, after it has been returned.—Lloyd v. Hankinson, 6. Halst. R. 218. and cases there cited, Matthews v. Warne, 6 Halst. R. 309 aud cases cited; and
2dly. The sheriff cannot sell by virtue of an execution any property upon which he has not previously levied on by virtue of *258 such execution —Matthews v. Warne, 6 Halst. R. 295 and cases there cited.
Now we have before us the levy and inventory made by the sheriff under the first four executions and we have also in evidence a document, marked exhibit D. on the part of William Cook, which .is proved by the sheriff to be an account.of property real and personal sold by him as the property of Thomas B. Wood under the said executions, upon which he had not levied and a large amount of which, probably more than sufficient to satisfy Cook’s execution, he could not have levied on under the first executions, consisting of subsequently acquired property, and after grown crops, and other articles which came to the sheriff’s knowledge after the first executions had been levied and returned. The amount of which extra sales are at least sufficient to pay Cook’s execution .three times over, and probably enough to pay his, and that of Morris Hancock’s also.
If this property was not levied upon under Cook’s execution, it ought to have been. The sheriff had no authority to seize or sell any of it, under the first four executions, and having done so, the proceeds ought, upon the plainest principles of justice, to be applied to the satisfaction of Cook’s execution.under which only, it could have been levied upon and sold.
But this is not all; it appears in evidence, that the sheriff not only actually levied under Cook’s execution upon every thing which he had seized and inventoried under the first four executions but upon a variety of other property which he says he found out afterwards; and among the rest upon the store goods. Yet the whole of this newly discovered property as well as the store goods, were sold under all the executions, and the proceeds are now claimed by Charles and Hannah M. Wood to satisfy their executions in exclusion of Cook’s: This claim cannot be admitted. The store goods alone sold for about one hundred dollars, nearly one fourth of the amount of Cook’s execution, and exhibit D. shews sales of property not levied on, far exceeding the amount necessary to pay the whole of it.
Upon stating an account of sales, and applying the proceeds to the satisfaction of the executions in the order in which they were numbered, there would be sufficient to satisfy, 1st. Charles Wood’s execution against Thomas B. Wood. 2dly. Hannah M. *259 Wood v. Thomas B. Wood. 3d. Charles Wood v. Thomas B. and Isaiah Wood, and leave a considerable balance to be applied towards the execution of Grant Gibbons v. Thomas B. Wood.
But this arrangement would be manifestly unjust; for no money under any circumstances, ought to be applied to the satisfaction of any of the first four executions except such as arose from the sale of property, regularly levied on, and sold under them; and the money which arose from the store goods and other property of every description, not levied on under the first four executions, or at least, so much of it as may be necessary for the purpose, should be applied to satisfy Cook’s execution. — Of this position, I think there can be no doubt; and I am satisfied from the evidence in the case, that such an appropriation of the funds, would fully pay off Cook’s execution and perhaps Morris Hancock’s too.
But be that as it may, I am clearly of opinion, that Charles Wood, Hannah M. Wood and Grant -Gibbons, all lost their priority in this case, and ought to be postponed, to Cook, and perhaps to Hancock too; but as to the latter, we have nothing now to do.
We have somewhat relaxed the rule in this state, (and perhaps with reason and propriety) which prevails in England, and which will not permit a merciful creditor, with any safety to himself, to grant his execution debtor, the least indulgence. Casper v. Peterson, 1st. South. 317. But we have never gone so far, and I hope never will, as to justify such an abuse of the process of the Court, as has been attempted in this case. If it comes to that, then a man only has to confess a judgment to a friendly creditor, and let an execution be lodged with the sheriff, and he may quietly enjoy his property ; carry on his business; buy and sell lands and goods; consume or waste his property, and keep every other creditor at bay, for an indefinite period. All this has been done in this case. And when Cook goes with the process of this Court in his hands and asks for his money, he is told, by those who oppose this motion, you must stand off, and wait until we choose to proceed. If you will let the defendant alone; let him enjoy his property and dispose of it as he pleases, we will do so too: but if you compel a sale, we mean to be first paid. — This is in effect the language, and such *260 has been the conduct of the plaintiffs. Their motives may have been kind and humane towards the defendant and his family, but the effect of such a course, is unjust to Cook, and other creditors.
The legislature, to prevent this very abuse in the case of confessed judgments, have required the plaintiffs to swear that the judgment is not intended, “ to protect the property of the defendant, from his other creditors.” — Such an affidavit has been made by each of these opposing plaintiffs; and yet they, or at any rate, Charles Wood, has avowedly used the judgments, for that very purpose. When the executions were first delivered to the sheriff, his instructions were, not to shut up the defendant’s store — a few days after, he sends to the sheriff, written instructions not to proceed any further on the executions, until he otherwise directs. Sheriff English swears that Charles Wood repeatedly told him, not to let any other creditor come in before him; that whenever any other execution was pressed, he should proceed on his. The executions are suffered to lie, dormant, in the sheriff’s hands for nearly a whole year; in the mean time, the defendant, retains the possession of all the property, real and personal — he continues to retail the goods out of his store, as usual — he sells or otherwise disposes of, as he pleases, the very property levied on; — consumes the crops,, farms out his lauds; sells his carriages and cattle, and when the sheriff comes to look for the property upon which he had levied; he finds much of it gone; and all this, as is abundantly proved, with the knowledge and approbation of Charles Wood. The sheriff testifies, that on several occasions, he told him of property, among which was rails, and a wagon and horse, that the defendant had disposed of, and his reply was, that he did not wish to distress his brother. The sheriff once sued a man for taking away some of the property he had levied on; and which the man had bought of the defendant Thomas B. Wood; but Charles Wood found fault with the sheriff for doing so, and became bail for the man — and by his own admission in writing, made before the commissioner, and read in evidence on the argument, Charles Wood expressly admits, that Thomas B. Wood and his ■family, used, enjoyed and disposed of the property, as they had previously done, and with his approbation. It would be tedious *261 and unnecessary to refer to all the affidavits, but it appears from them, that Thomas B. Wood sold and disposed of property, after the levy on the first four executions to the amount at least of— dollars, — many times more than sufficient, to satisfy the execution of Cook.
Under all these circumstances, I cannot doubt, either upon the immutable principles of equity and justice, or upon the ground of authority, but that Charles Wood’s execution must be postponed until that of Cook shall be satisfied — whether Hancock may not also claim a preference over Charles Wood, as well as over Hannah M. Wood and Grant Gibbons, remains to be settled whenever he shall ask the interference of the proper tribunal. Cook is the only creditor whose judgment was in this Court, and we can only extend our protection to him.
The counsel for Cook has with great and commendable industry, referred us to numerous authorities on this subject, sustaining his views of the case; but it would be a useless consumption of time and space, to examine them in detail. I will only name the cases in this Court viz. Williamson v. Johnson, 7 Halst. R. 86, Matthews v. Warne, 6 Halst. R. 295 and Lloyd v. Wyckoff, 6 Halst. R. 218, in which the other authorities and cases referred to, by counsel, are cited and commented on.
We are gravely told by the counsel for Charles Wood, that no fraud or collusion was intended; that the debt was justly due and owing to him, and we have Thomas B. Wood’s affidavit in support of these allegations — all this is cheerfully conceded.— The judgments were not confessed nor were they afterwards kept on foot, with any settled,' deliberate design to defraud Cook or any body else. But that is not the point. The use made of these executions, has been constructively fraudulent. It has tended to hinder and delay creditors — and in short, without resorting to any such refinements, the execution of Cook was in fact the oldest execution against the defendant, when it was delivered to the sheriff; I mean the oldest execution, then in force. Charles Wood, Hannah M. Wood, and Gibbon, had in writing under their own hands, superseded their several executions ; never to be acted on again, unless they should give directions to that effect. No body but themselves, could ever afterwards give those executions vitality, or action. Neither the Court, nor the *262 defendant could ever revive and put them in motion again : their binding effect, at least, as to other creditors, were as completely at an end, as if they had been recalled by the plaintiffs, out of the hands of the sheriff. He had no possession of, property in, or control over the goods, any more than if such executions had never been issued; and if the defendant had sold or destroyed them all, the sheriff would have been as irresponsible for them, as a stranger. Moreover, the executions had been indefinitely, superseded and put to rest; and whether they ever would be revived again, was unknown to any human being. In this condition, they were, when Cook’s execution was given to the sheriff with instructions to execute it immediately. After that and not until Cook’s execution had, in legal effect taken hold of and fastened upon the property, were the old executions revived and attempted to be put in motion again, by the orders of the plaintiffs. It was then too late — Cook’s execution was literally the first execution put in the sheriff’s hands with instructions to proceed thereon, and for the purpose of being executed- in good faith, and according to law — A delivery of an execution to a sheriff, with instructions to do nothing with it, is no delivery. It would be a nullity, and would bind nothing.
Suppose a plaintiff should sue out a fi. fa. hand it to the sheriff, and instruct him, to make no seizure or levy on it, but to keep it in his pocket, and not to use it, until he gave him further orders; and in the mean time another fi. fa. comes to the sheriff with orders to proceed, and after that he is directed to levy the first writ — can any man doubt that in such case, the second writ, would in law, be deemed to be the first in order? I think not; and I can see no difference in the cases.
In my opinion Cook is entitled to the money in Court, or in other words to. have his execution satisfied, with interest and costs, before Charles Wood is paid.
Ford, J.
concurred in ordering Cook’s execution to be satisfied out of the moneys in the hands of the sheriff, on the ground that sufficient had been raised for that purpose, out of property not levied upon under Wood’s execution.
Ryerson, J. concurred generally.
Cited in Cumberland Bank v. Hann, 4 Harr. 168; Caldwell v. Fifield, 4 Zab. 161.

 The stays are in the following words — To David S. English esq. sheriff. Sir you will please stay all other proceedings against Thomas B. Wood, and Isaiah Wood on those executions, you hold in my favour and myself and John Wood, and Hannah M. Wood until further orders from me.
Pittsgrove, March 14, 1835.
Your’s respectfully Charles Wood.
To David S. English esq. — Sir you will please to stay all further proceedings on that execution you have in your hands in my favour against Thomas B. Wood until further orders from me.
Your’s respectfully Hannah M. Wood.
Pittsgrove Salem county March 24th 1835.