JOHN A. VOORHIS ET AL., EXECUTORS, PLAINTIFFS IN ERROR, v. RICHARD P. TERHUNE, DEFENDANT IN ERROR.

1. The Supreme Court, in virtue of its right of control over its own process, has full power to set aside and annul, for good cause, levies and sales made by sheriffs and other officers in execution of final process issued out of said court, when proper parties are or can be brought before the court.
2. Irregularities and willful disregard of statutory directions by the officer having process to execute injurious to the parties, or any misuse, abuse in fraud of or to the injury of parties, afford such good ground.
3. The determination of the court below on questions of fact will be reviewed on writ of error only so far as is necessary to determine whether or not there be competent evidence legally sufficient, upon a reasonable interpretation of it, to support the finding.

Error to the Supreme Court.

For the plaintiff in error, *John W. Taylor.*

The writ of error in this cause was brought to review an order made by the court below, vacating and setting aside " the levy made by William H. Brown, sheriff of the county of Essex, upon five shares of the capital stock of the Midland Railroad Company of New Jersey, owned by the defendant, by virtue of an execution issued out of said court, and the sale of said stock by said sheriff to Edwin A. Rayner."

The order was made on the petition of the defendant, and upon evidence taken under an order to show cause. No opinion was filed, and the reasons which induced the court below to make the order do not appear.

It is submitted that the order in question is erroneous and should be reversed.

I. The " levy " and " sale " ordered to be set aside were regular and valid.

1. The judgment was regularly and properly docketed in the Supreme Court.

2. The execution was regularly and properly issued to the sheriff of the county of Essex.

The defendant, in his petition, says that there was " no necessity to have said judgment docketed in the Supreme Court in order to levy upon said railroad stock; that a levy could have been made upon the same as well by the sheriff of Bergen county as by the sheriff of Essex county."

But it does not appear, and it cannot properly be assumed, that the judgment was docketed in the Supreme Court " in order to levy on said railroad stock," and the evidence is to the contrary.

Even if not necessary to docket the judgment, it was right and proper to docket it (*Rev., p.* 521, § 6), in order that it might " operate as a judgment obtained in the Supreme Court " (*Rev., p.* 522, § 11); that is to say, that it might become a lien on lands of ·the defendant in any and all counties of the state, and that an execution might issue and be levied on any of the defendant's property, real or personal, tangible

goods and chattels or shares of stock, in any and every county of the state, at the option of the plaintiff. *Rev., p.* 878, § 198.

The plaintiffs' judgment was recovered "as early as April, 1860." The defendant had disposed of all his real estate in Bergen county before the recovery of the judgment, and the judgment had remained unsatisfied for four years, and the plaintiffs' attorney, the late Mr. Ackerson, very properly said: "As a matter of precaution and duty, I thought it best to have the judgment docketed in order to bind any property he might have or acquire elsewhere, or that I might be able to enforce the judgment anywhere in the state."

He further says: "At the time that that judgment was docketed, I did not know that he [the defendant] held this stock in the Midland Railroad Company."

He also says: "I don't know that at that time, when the execution was issued, that I knew that Mr. Terhune held this stock in question."

3. The levy and sale were made in accordance with the statute. *Rev., p.* 389, §§ 4–7.

(1) Shares of stock in a corporation "may be taken and sold by virtue of such execution, in the same manner as goods and chattels." *Rev., p.* 389, § 4.

(2) The circumstance that the defendant happened to reside in Bergen county did not incapacitate or excuse the sheriff of Essex county from levying upon these five shares of stock. His power and his duty were precisely the same as if they had been five yoke of oxen, or other goods and chattels of the defendant.

(3) If such shares could be levied on and sold only in the county where the defendant happened to reside, then it would follow, "as the night the day," that the shares of a non-resident in a corporation of this state would be absolutely exempt from levy and sale under process of our courts.

(4) Although it may have been proper for the sheriff to have given special notice of the sale to the defendant, yet it was not his legal duty to give it; much less was it a condition precedent to his right to sell.

(5) The sheriff complied fully with the requirements of the law. Such, at all events, is the legal presumption. *"Omnia præsumuntur rite et solemniter esse acta."*

Mr. Rafferty was, and had been for years, the only secretary of the company, the stock in which was sold.

It is sufficient if he were only the acting or *de facto* secretary.

II. But, even if the levy was irregular, and there was no error in setting it aside, the order was erroneous, so far as it related to the sale.

1. While under our constitution and system of judicature, a court of law has control over. its own process, and can set it aside if wrongfully or irregularly issued, it is insisted that it cannot set aside or annul an executed contract of sale made under that process ; and it is submitted that the order in that respect is novel and unprecedented in this state, where law and equity are sharply defined and administered by separate and independent tribunals.

" In making ordinary execution sales, simply by virtue of his office, the sheriff or marshal acts as the ministerial officer of the law, not as the organ of the court. He is not its instrument or agent, as in judicial sales, and the court is not the vendor. His authority to sell rests on the law and the court, and does not, as in judicial sales, emanate from the court. . The functions of the court terminate at the rendition of the judgment, except where confirmation of the sale is the practice. The court does not direct what shall be levied on or sold, or how the sale shall be made. The law is the officer's only guide." *Rorer on Sales*, § 590.

2. The courts of law in this state certainly have no more control of execution sales of personal property than of real, yet will any one be so bold as to contend that a court of law may set aside an executed sale of real estate. Where sheriffs' sales of either species of property are consummated, they become executed contracts, and, as such, alike beyond the jurisdiction of a court of law.

3. It is conceded that if the process is wholly void, no

authority to sell vests in the sheriff, and the sale itself will be void; but if not absolutely void, although irregular and voidable, a sale of either real or personal property, made under it and consummated, will be valid and effectual, although the process may afterwards be set aside and annulled.

"If the sheriff sell a term under a writ of *fieri facias*, which is afterwards set aside for irregularity, and the produce of the sale directed to be returned to the termor, the latter cannot maintain an ejectment to recover his term against the vendee under the sheriff." 2 *Tidd's Pr.* (*4th Am. ed.*) 1032; *Doe* v. *Thorn*, 1 *M. & S.* 425; *Eyre* v. *Woodfine, Cro. Eliz.* 279; *Hoe's Case*, 5 *Coke* (*T. & F. ed.*) 90 *b*, *and note E; Manning's Case*, 8 *Id.* 96 *b; Drury's Case*, 8 *Id.* 143; *Rorer on Sales*, § 608.

4. In this case, an innocent purchaser paid the price of the property sold to him, and the defendant, as well as the plaintiffs, had the benefit of the money paid; and yet the order does not direct a restoration of the purchase money, or attempt to adjust the respective rights and equities of the different parties to the transaction.

Indeed, the court, being only a court of law and not of equity, could not adjust those rights and equities, neither, as is respectfully insisted, could it properly make the order it did make.

For the defendant in error, *John Linn.*

We claim that all of the proceedings and sale under this execution should be vacated and set aside, and declared null and void, as has been done by the Supreme Court, for the following reasons:

First. Because this was a scheme to make use of the process of this court for the purpose of defrauding a party of his property without any opportunity of protecting himself. It was a scheme and most clearly an intended fraud. A plan to deprive any one of his property intentionally, in such a manner that he shall have no knowledge whatever of the pro-

ceeding until it shall have been consummated, although by process of law which may be technically regular, is none the less a fraud. It is not honest and fair dealing, and in the light of administering justice between man and man, cannot be defended or upheld.

Such conduct and such proceedings need not any argument to condemn them. They cannot but strike every fair minded man at first blush as being a monstrous perversion of justice and a great wrong.

For an illustration of how proceedings of a similar character are viewed in a court of justice, see *Cummins* v. *Little*, 1 *C. E. Green* 48; *Meyer* v. *Bishop*, 12 *C. E. Green* 141.

But it is insisted that if the defendant has any claim to relief from these fraudulent acts, the Supreme Court, out of which the execution issued, is powerless to aid him—that he must go into a court of equity. But why so? Has not a court of law power over its own process and proceedings? If made use of for the clear purpose of fraud and wrong, must it close its doors to the party injured? Must it say, through its judges: "We did not do this and we cannot help you. It is true the parties which were before us, and our sworn officers have made use of our process to do you this great wrong, but we can do nothing to rectify the wrong; you must go to the Court of Chancery, and perhaps that absorbing power may give you the relief you need?"

It is a familiar principle, universally recognized, that courts of law, as well as courts of equity, have control over their own process, and may vacate and set aside the same, and annul all proceedings under the same when attempted to be used for the purposes of fraud and injustice.

In *Rorer on Judicial Sales*, p. 289, ¶ 850, the following language is used: "The court upon whose judgment the execution issues has full power to set aside an execution sale whenever the ends of justice and fair dealing require it, and to order a resale, or award execution anew, at discretion."

In *McLean County Bank* v. *Flagg*, 31 *Ill.* 290, the court use the following language: "The power over its own process

is possessed by all courts. Such power is a species of equitable jurisdiction that is inherent in courts of law as well as those of equity. This court has repeatedly held, as between the purchaser and the original parties to the suit, that a court of law will not hesitate to exercise the power of setting a sale aside on account of fraud or irregularity." *Groff* v. *Jones*, 6 *Wend.* 523; *Draine & Smilsor* v. *Henderson*, 15 *Ala.* 428; *Reed* v. *Diver*, 7 *Ind.* 189; *Davis* v. *Campbell*, 12 *Ind.* 192; *Nelson* v. *Brown*, 23 *Mo.* 13; *Hayden* v. *Dunlap*, 3 *Bibb* 216; *Arnott & Copper* v. *Nichols*, 1 *Harr. & J.* 471.

That such has been the abuse of the process of the court in this instance, no one can fail to see upon reading the affidavits which have been taken under this rule. We forbear to particularize, but prefer to ask the court carefully to consider this evidence.

The single suggestion made by counsel of Mr. Rayner, and the counsel of the New York, Susquehanna and Western Railroad Company, that Mr. Terhune could now have his five shares of stock in the shape of five shares of stock of the New York, Susquehanna and Western Railroad Company, although of greater market value than when it was converted into stock of the consolidated company, reveals clearly the secret which led to this iniquitous proceeding.

It was not the intrinsic value of Mr. Terhune's Midland stock that they wanted, but they were anxious to have those five shares of stock, as Midland stock, out of the way. They gave Terhune a standing in court, and this company and its friends were consequently greatly annoyed by it. If they could only get them converted into New York, Susquehanna and Western stock, their purpose would be accomplished, and having done this, as they think, and thus deprived Mr. Terhune of his weapon of attack, they generously offer him back five shares of the stock of that company in place of those which, if their action is upheld, they have purposely destroyed.

Second. We claim that these proceedings should be de-

clared null and void, because there is no warrant or authority in law by which they may be sustained.

These five shares of stock, if they had any *situs* in this state subjecting them to levy here, had their *situs* in Bergen county, where Mr. Terhune lived, and not in Essex county, or any other county in the state where he did not live.

The property in question, in legal contemplation, is personal or movable property. It has its *situs* at the domicile of its owner. This is the general rule, to which there are exceptions. But there are no exceptions which take this case out of the general rule.

This matter is discussed by Wharton in his Conflict of Laws. *Whart. on Conflict of Laws,* § 339, &c. ; *Story on Conflict of Laws,* § 374, &c. In a note to section 383 of Story, the language of Chief Justice Tilghman is quoted where he says : " The proposition that personal property has no locality, but is transferred according to the law of the country in which the owner is domiciled, is true in general, but not to its utmost extent, nor without several exceptions. In one sense personal property has locality, that is to say, if tangible, it has a place in which it is situated, and if invisible (consisting of debts, &c.), it may be said to be in the place where the debtor resides."

The same question is discussed in *Varnum* v. *Camp,* 1 *Green* 326.

For different purposes the *situs* or locality of personal property is held to be in different places. For one purpose it is in one place, and for another and different purpose it is in another place.

But I think it very clear that the *situs* of this stock, for the purpose of levy, advertisement and sale, was in Bergen county, and not elsewhere.

There was no necessity of going to Essex county for the purpose of making this levy, and no excuse for it whatever, excepting that the parties desired to have a sale in such a way that Mr. Terhune would know nothing of it.

They could, with the same propriety, have issued an exe-

cution to Cape May, and had the property sold at Cape May Court House, as well as at the court-house in Newark.

Is this court prepared to sanction or adopt any principle by which such a proceeding would be tolerated?

But if the *situs* of this stock was such that it could be levied upon by the sheriff of Essex county, while the owner, Mr. Terhune, lived in Bergen county, it has still not been done in such manner as to be even technically correct.

The statute authorizing such proceedings is on page 390 of the Revision.

By an examination of this statute in connection with the evidence produced, it is clear that the provisions of the law have not been complied with in the following particulars:

No application was made to the clerk, cashier or other officer of the Midland company.

No notice was sent to the clerk, cashier or other officer of the Midland company.

No such notice as required by the statute was sent to any person.

No such notice was set up by the sheriff at all, in his county or elsewhere.

No notice whatever was served upon the president or directors of said Midland company, or upon any of them, or upon any officer of said company.

All of these things are required to be done in order to constitute a valid levy, and yet not one of them has been done. Clearly, one object to be accomplished by those various requirements was that all parties interested, both the company and the defendant, should have notice of such proceeding.

In the case of *Princeton Bank* v. *Crozer,* 2 *Zab.* 386, the court say: "In cases like that now under examination, public policy and commercial convenience plainly require that the officer should inform a defendant, if within his jurisdiction, that he takes his stock under the writ."

As the law then stood, there was no express direction or provision that any notice should be given to the defendant,

personally, of a levy upon property of this character, and yet the court deemed it essential to be done, in order to constitute a valid levy. Certainly if it was not then, and is not now, absolutely essential, it is so reasonable and so proper a thing to do, and so in accordance with fundamental legal principles and with all legal proceedings that whenever the court can see that any particular method of proceeding has been adopted for no other purpose than to keep such knowledge away from the defendant, they will not give it the sanction of their approval.

It is no answer to this to say that there was no clerk, cashier or other officer of this company to whom application could be made, or to whom notice could be sent as required by the statute, for the reason that the company had ceased to exist and therefore had no such officer. If such were the fact, then this case was not within the purview of the statute, and no levy could be made upon this stock as attempted. The party would be left to other remedies which are obvious to every lawyer, but they could not proceed in this way.

Certainly the court will not say that a levy could be made upon property of this character without a compliance with either the letter or spirit of the statute. There can be no reasonable pretence that the letter of the statute has been complied with. And the whole spirit of it has been more clearly violated in that no notice was given to the defendant, but, on the contrary, the whole proceeding was so carried on for the very purpose of keeping the notice from him.

The opinion of the court was delivered by

KNAPP, J. Under this writ of error the plaintiff attacks the validity of an order made by the Supreme Court setting aside a sale of shares of stock in the Midland Railroad Company of New Jersey, belonging to Terhune. The sale was made by the sheriff of Essex county, under an execution, issued out of the Supreme Court, on a judgment recovered by the plaintiff in error against the defendant in error, in the

Bergen Circuit Court, and afterwards docketed in the Supreme Court.

The chief legal question involved in the case is whether the Supreme Court of this state has adequate power of control over its own process of execution to annul and set aside a sale made by the law officer having the writ to execute, when such process has been used for, and the sale under it accomplishes fraud, injustice or oppression, and when all the parties are before the court.

This power is denied by the plaintiffs in error, who contend that remedy can be had only by resort to a court of equity.

That courts of equity have jurisdiction to determine the validity of sales made by sheriffs and other law officers in the execution of final process of the law courts is undoubtedly true. That the exercise of such a power in the law court is of an equitable nature may be fully conceded. But this is no new thing, for the determination of questions frequently adjudged in the law courts rests upon equitable principles and upon the exercise of equitable powers.

There are cases which, in the adjustment of all the rights of interested parties, are beyond the grasp of courts of law, and the broader range of equity jurisdiction is by the circumstances required to administer complete justice. But where the parties in interest are all before the court whose process has been irregularly used or abused, and full justice can be done by the methods and practice of such court, it would be admitting a fatal weakness in the constitution of such court to concede that it is powerless to do what indisputable justice may demand to be done. Such power would seem to be necessarily inherent in a court of as broad jurisdiction as that of our Supreme Court, and strong reasons should be found to bar the way to its exercise in proper cases, while in truth no valid reason is, or, as I think, can be urged against it.

It is true, generally, that in sales under execution the duties of the officer executing the writ are directed by statute, and title passes to a purchaser without further confirmation by the court out of which the process issued, but it may be as-

serted that according to the prevalent practice of the courts in the American states the negative power of setting aside such sales for cause is claimed and exercised.

In Rorer on Judicial Sales, as the result of a quite full examination of the cases, the rule is stated to be that the court upon whose judgment execution issues has full power to set aside an execution sale whenever the ends of justice and fair dealing require it, and to order a resale, or award a new execution at discretion.   The following language of the court, in *McLean County Bank* v. *Flagg*, 31 *Ill.* 290, is noted as a correct statement of the general rule :

" The power over its own process is possessed by all courts. Such power is a species of equitable jurisdiction that is inherent in courts of law as well as courts of equity.   This court has repeatedly held, as between a purchaser and the original parties to the suit, that a court of law will not hesitate to exercise the power of setting a sale aside on account of fraud or irregularity."   *Rorer on Judicial Sales*, § 1081.

In Herman on Executions the cases are fully collected in support of the power of the court to set aside sales made on its own process.   The writer says : " It is the duty of all courts, when satisfied that sales made under their process is affected with fraud, irregularity or error, willful disregard of the statutory regulations by the officer, whereby the rights of either of the parties interested are seriously affected, to set aside such sale, upon a proper showing to the court under whose process the sale was made, and order a resale of the property." *Herman on Executions, p.* 406, § 249, and cases.

Freeman on Executions fully recognizes this authority in all courts.

In this case all the parties were before the court below, and the action of the court was the exercise of no unusual or doubtful power.   It had jurisdiction, not only to set aside the levy, but to order a rescission of the sale made by the sheriff, if sufficient ground was laid before it to call for such action.

Was there legal ground for the judgment of the court below ?   This depends upon its finding of fact upon evidence.

This is a writ of error, and its sole office is to present legal questions for decision. Under it the court will not decide questions of fact, and will look into the evidence only to discover whether it affords, on any permissible interpretation of it, a rational support for such finding. If it be found to be of this degree of strength, the determination of fact must be accepted as conclusive. *Harrison* v. *Allen*, 11 *Vroom* 556; *Johnson* v. *Arnwine*, 13 *Vroom* 451, and cases cited.

In Johnson *v.* Arnwine, one, among the errors assigned, was that the proof of loss of a paper was insufficient to let in secondary evidence of its contents. This being a preliminary question, to be solved by the court upon the evidence, Justice Depue says: " If the decision of the judge, upon the testimony offered on that subject, is liable to review on writs of error, the *onus* is on the plaintiff in error of showing that the result reached was *erroneous*, and there should be no reversal unless it clearly appears that the court below was in *error*, and that injustice was done by the *erroneous* decision." This branch of the case exemplifies in one of its phases the rule of this court that it reverses only for errors in law injurious to the party assigning them.

That the testimony taken under the rule in the court below was legally sufficient to support a state of facts, such as justified the court in its determination, admits of no serious doubt.

The levy made by the sheriff was, as to this species of property, of too doubtful a character, under our statute, to demand that it be sustained.

Shares in corporations were not, in this state, the subject of sale under execution before the passage of the act of March 9th, 1842, entitled "An act to abolish imprisonment for debt." The fifth section provided that any share or interest in any joint stock company, incorporated in this state, belonging to a defendant in execution, may be taken and sold by virtue of such execution, in the same manner as goods and chattels. The sixth section required the clerk, cashier or other officer of the company, having custody of its books, to certify to the sheriff, on his presenting the execution, the num-

ber of shares or amount of interest held by the defendant in the company.

In the Revision of 1846 these sections passed into the act respecting executions, as the seventh and eighth sections of that act.

It was held under this legislation that the delivery of execution to the sheriff did not bind this kind of property; that a levy made by the sheriff by mere inventory, without applying to the company, whose shares the defendant held, was not sufficient to defeat the rights of one purchasing such shares of the defendant. It was also strongly urged that actual notice to the defendant, if within the sheriff's jurisdiction, that his stock was levied upon, was required by considerations of public policy and commercial convenience. And this where the office of the corporation was within the sheriff's bailiwick. *Princeton Bank* v. *Crozer*, 2 *Zab.* 383.

The law prescribing the present mode of levy upon such property is embodied in the fourth, fifth, sixth and seventh sections of the act relating to executions. *Rev., p.* 390.

The earlier provisions referred to are retained substantially as first enacted, and in addition a mode is prescribed in the sixth section for effecting a levy where the custodian of the books, *being the clerk, cashier or other officer of the company,* is not resident in the state. In such case, the notice and requirement of certificate of the defendant's interest may be mailed to such officer of the company having the books. In addition to notice by mail, it is made the duty of such sheriff, " on the day of mailing such notice, to affix and set up, upon any office or place of business of such company within his county, a like notice in writing, and upon the same day to serve like notice in writing upon the president and directors of said company, or upon such of them as reside in his county, either personally or by leaving the same at their respective places of abode; and the sending, setting up and serving of such notices, in the manner aforesaid, shall constitute such levy taken a valid levy of such writ upon all shares

Voorhis v. Terhune.

of stock in such company held by the defendant in execution."

The mode thus prescribed for effecting a levy on stock was designed to and can scarcely fail of bringing notice to a defendant of the fact of levy, without direct communication with him. Notice directly to the defendant is not required to be given by the present law, nor was it by the act of 1842.

In the seizure and sale of this species of right, notice in some form to the defendant would seem indispensable to avoid loss or fraud, and in the majority of instances a faithful pursuit of the statutory mode must inform him in time to protect himself. The statutes contemplates full publicity.

All that was done in this case, in the attempt to make a levy, was notice sent to the secretary of the New York, Susquehanna and Western Railroad Company. He was not an officer of the Midland company, in which the defendant held the stock which was intended to be taken under execution, and the inference is fairly to be drawn from the testimony that the officer applied to was more likely to conceal from the defendant the proceeding than to inform him of it.

As to the sale, I deem it to be established in the case that the process of execution was misused to the detriment of the defendant. It was not illegal to issue execution to the sheriff of Essex, but there was nothing that legitimately called for that course. The defendant had no property there. The shares of stock were insignificant in value, and if the design was simply to reach them towards satisfaction of judgment, they were as well within the reach of the sheriff of Bergen county, where all the parties resided, and where the defendant would have been quite certain of notice. But the court below were justified in concluding satisfaction of the debt was not the motive that caused this writ to be issued. The defendant and the New York, Susquehanna and Western Railroad Company were opposing litigants, and the ownership of this stock gave the defendant an advantage in the litigation which the loss of the stock would deprive him of. The evidence justified the belief that the plaintiffs permitted their

process to be used by or in behalf of that company to get this stock from the defendant without his knowledge, and to put him at a disadvantage in their contest.

It was a use of the writ wholly foreign to its design. It was granted to the plaintiffs for just and legitimate purposes. Its control and use was placed at the disposal of a stranger in interest to the suit, whereby indirect, unjust and oppressive ends might be effected against the defendant.

This was ground for setting aside the sale, and the order of the court below should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, McGREGOR, PATERSON, WHITAKER. 12.

*For reversal*—None.