PIETRO PALLADINO

v.

JOHN A. HILPERT and FRANK SCUTELLARO.

[Decided January 23d, 1907.]

1. If it be the rule that a sheriff must first levy an execution on personal property before levying on real estate, his impropriety in not doing so is a subject for correction by the court out of which execution issued, and the debtor cannot invoke injunctive relief.

2. In a suit to restrain an execution sale, evidence considered, and *held* insufficient to show that the real estate in question sold for an inadequate price.

3. In a suit to restrain an execution sale, it appeared that before the writ was issued, the attorneys of the judgment creditor notified the debtor that the judgment had been docketed, and that, unless he settled, they would issue an execution; that he paid no attention to such communication, and that the sheriff in levying actually notified the debtor, and after the execution was levied, the attorneys again wrote the debtor, notifying him that the property would be advertised for sale. The debtor testified that he had gone to a lawyer to have the judgment opened, and that, as the lawyer told him not to do anything, he supposed the lawyer was taking care of him.—*Held*, that the facts were insufficient to show that the debtor was under any mistake or misapprehension as to the situation, whereby he failed to protect himself at the sale.

Heard on motion, affidavits in support thereof and affidavits on behalf of defendants.

This suit was instituted by a bill praying that a judgment docketed from the district court of Hoboken in the Hudson county common pleas be decreed a nullity and void, and that a sale of real estate belonging to the complainant, made by the sheriff of Hudson county on December 13th, 1906, to the defendant Scutellaro be declared void.

Upon this bill and affidavits in support thereof a motion was made for a preliminary injunction restraining the defendant Scutellaro from obtaining from the sheriff of Hudson county a

deed for the premises sold by the sheriff to Scutellaro at the sale aforesaid.

*Mr. Horace L. Allen,* for the complainant.

*Mr. Leon Abbett,* for the defendant Scutellaro.

GARRISON, V. C.

The affidavits on behalf of the complainant set out that in 1896 he owned a stock of goods, merchandise and other varieties of personal property of the value of at least $1,000; that Hilpert, on the          day of          , obtained a judgment against him in the Hoboken district court for the sum of $248.50 and costs; that the deponent applied to have said judgment opened; that the execution out of the district court was not attempted to be levied upon his personal property; that he believed that an injustice had been done him by the judgment and had retained an attorney to try to have the same opened, and believes that it would not be necessary for him to pay the said judgment; that he never knew that his real estate was to be sold by the sheriff to satisfy the said judgment, and he never knew that his property had been advertised by the said sheriff; that he did not attend the sale, although he could have easily paid the judgment had he been aware of his situation; that his first knowledge of the sheriff's sale was after it had been held; that his real estate is worth $14,000, subject to a $7,500 mortgage, so that his equity is $6,500, and that the defendant Scutallaro bought in the property for the grossly inadequate sum of $600.

He produces the affidavit of the deputy sheriff who made the levy, in which he states that he was given the writ on the 4th of October, 1906, and was furnished with a description of the real estate belonging to the complainant and instructed to levy upon said real estate; that on October 4th, 1906, he called upon the complainant at his aforesaid property and showed him such writ of execution and informed him that he levied upon his real estate, and that he should come to the sheriff's office and settle said judgment. He further avers that he did not at that time,

or at any other time, make any levy upon the personal property of the complainant.

There are also affidavits and depositions showing that the sergeant-at-arms of the district court did not attempt to levy upon the personal property of the complainant, but made return that the writ was unsatisfied.

There are many averments in the affidavit of the complainant concerning the original suit between him and Hilpert, the endeavor being to show that the defendant therein, the complainant here, should have succeeded in that suit.

The affidavits of the defendant Scutellaro also contain matter concerning the original suit, and he seeks to show by his own and other affidavits that that suit was properly determined.

The defendant produces affidavits that the real estate of the complainant is not worth more than $11,500; that the personal property contained in the saloon of the complainant, which he values at $1,000, was not worth over $500 or $600, and that the fixtures in said saloon were covered by a chattel mortgage; that the complainant is not, as he asserts that he is, unable to understand English, but does understand the said language, and has carried on business with English people, and is capable of speaking and understanding that language, and has been in this country over twenty years.

The defendant Scutellaro states the circumstances under which he attended the sheriff's sale to show that it was by no arrangement with Hilpert or with any other person, that he was the holder of a mechanics' lien against the premises for a large sum of money, and was naturally interested in the matter of the sale, and upon being informed by a stranger that the sale was to take place—a fact which he had known but had forgotten—he attended and bought in the property for $600; that the sheriff announced that the property was to be sold subject to certain encumbrances and liens. These encumbrances are shown to be as follows: A mortgage for $7,500; a mechanics' lien in favor of Scutellaro for $4,439.90 with interest from April 10th, 1906; a lien in favor of the Fagan Iron Works for $444.20; a lien in favor of William J. Walsh for $385 with interest thereon; a recognizance in the court of quarter sessions for $200; taxes

for the year 1906, $59.40, and water rents amouting to $21.38. The proofs also disclose that application was made by the complainant in the Hoboken district court to open the judgment obtained by Hilpert against him in that court, and that it was. refused; that on July 30th, 1906, the writ of execution was issued out of the district court, and on the 31st of July was returned unsatisfied; that on the 3d of August, 1906, the said judgment was docketed in the court of common pleas of the county of Hudson;· that on the 5th day of September, 1906, the attorneys of the judgment creditor wrote a letter to the complainant herein in which they informed him that they had docketed the judgment, and that unless he called at their office by Wednesday of that week and settled the judgment they would proceed to issue an execution in the upper court and sell his property. To this letter they received no answer. On the 2d of October, 1906, the execution was issued out of the court of common pleas, and on the 4th of October the deputy sheriff exhibited this execution to the complainant herein and informed him that if he did not call at the sheriff's office and settle it his property would be sold; that on the 15th day of October, 1906, the attorneys for the judgment creditor wrote a letter to the complainant herein in which they informed him that they had issued execution against him on the docketed judgment and had placed the same in the hands of the sheriff, and that the sheriff had informed them that he had notified Palladino to that effect, and that the latter had paid no attention to it. They then proceed to state that unless this judgment is settled by Thursday of that week they should instruct the sheriff to advertise the property for sale. That they received no response to this letter; that on the 22d of September, 1906, they wrote a further letter in which they stated that unless the amount of the judgment was paid by Wednesday of that week they would have to direct the sheriff to sell him out on execution; that no reply was received to this letter, and thereupon they instructed the sheriff to proceed with the sale; that the sheriff strictly followed all of the requirements as to notice and advertisement, and the sale was duly held on the 13th day of December, 1906, and the property was bought in by Scutellaro for $600; that Scutellaro paid

$100 at the time and was prepared to pay the balance, but was restrained by the temporary order of this court granted on the filing of the bill and the affidavits herein.

The complainant insists that he is entitled to the aid of this court to restrain the defendant Scutellaro from perfecting the sale and taking a deed from the sheriff for the property. He asserts that the execution out of the district court should have been levied upon his personal property; that it is improperly docketed, because in the certificate accompanying the application to docket the clerk did not correctly state the return of the officer as endorsed on the writ; that the officer endorsed on the writ that he returned the same

"unsatisfied, not having been able to find any goods and chattels, the property of the within-named defendant, in Hudson county to levy on and sell as I am within commanded."

In the certificate accompanying the application to docket the certification is that the writ was returned by the officer "unsatisfied."

The complainant further insists that the sheriff did not levy on the defendant's personal property, as he was commanded by the writ, but did levy on the real estate; that since the complainant had sought legal advice, and was told not to pay the judgment until his attorney advised him to, he rested secure, and paid no attention to any of the proceedings, and therefore is entitled to the aid of this court in the setting aside of this sale, which he says was for a grossly inadequate price.

The sheriff's return on the writ of execution issued out of the common pleas recites that by virtue of the writ he has seized and levied on the lands and tenements of the defendant as per inventory and description annexed, subject to all prior legal encumbrances, "all the rest, residue and remainder of defendant's personal property value one dollar." To the writ there is annexed a description of the real estate.

With respect to the question of the improper docketing of the judgment and the impropriety of the sheriff in making the levy, I think that it is clear that the complainant herein has an adequate remedy at law, and that this court should not interfere.

If it be the law in New Jersey, as it is in several jurisdictions (*11 Am. & Eng. Encycl. L. (2d ed.) 654 note 2*), that the sheriff must first levy upon the personal property of the defendant, his impropriety in not doing so is a proper subject of correction by the court out of which the execution issued. The court of errors and appeals, in the case of *Voorhis* v. *Terhune, 50 N. J. Law (21 Vr.) 147,* lays down the rule that the court upon whose judgment execution issues has full power to set aside an execution sale whenever the ends of justice and fair dealing require it; and there are numerous cases in this state which affirm the right of the common law courts to exercise even equitable powers concerning the executions and sales thereunder in their own courts. *Barber* v. *Miller, 73 N. J. Law (44 Vr.) 38 (Supreme Court, 1905).* The general principles and numerous cases will be found in *17 Cyc. 1280; 25 Am. & Eng. Encycl. L. (2d ed.) 783; 17 Cyc. 1135.*

If it is to be the rule in New Jersey that the sheriff must first levy upon the personal property, under a common law writ, surely such a rule should be established by the courts of law, and the sheriff should be controlled in executing their process in this respect by those courts.

In the case of *Skillman* v. *Holcomb, 12 N. J. Eq. (1 Beas.) 131 (Chancellor Williamson, 1858),* the court says: "It would take a very strong case of fraud, mistake, surprise or accident to induce this court to interfere with the completion of a sale upon an execution at law," and he points out that all the cases referred to by the counsel for the complainant in that case were those where the court was asked to interfere with the execution of its own process, and he concludes that this is "a very different thing from interfering with the process of another and independent tribunal."

But the complainant points out that there has been established a doctrine in this state that a court of equity will set aside a sheriff's sale on a common law judgment, even if there has been no fraud, where there is gross inadequacy of price, and the party, by reason of mistake or misapprehension, did not attend the sale nor protect his interest thereat, and the sacrifice was caused by such mistake or misapprehension.

This is the rule as formulated in this state. *Raphael* v. *Zehner,*
*56 N. J. Eq.* (*11 Dick.*) *836* (*Court of Errors and Appeals,*
*1898*). This recent case on the subject relies upon and goes back
to that of *Kloepping* v. *Stellmacher, 21 N. J. Eq.* (*6 C. E. Gr.*)
*328* (*Chancellor Zabriskie, 1871*). A careful analysis of that
case, which certainly goes to the extreme limit to which such
jurisdiction can be extended, shows that the chancellor found
that the judgment debtor therein did not believe that the prop-
erty was to be sold to satisfy the judgment. In that case there
had been a judgment in a justice's court for $44. The judgment
debtor made an arrangement with the justice to pay the same in
installments of $6 each and paid six such installments. There-
after another suit was begun upon the original judgment for the
unsatisfied portion of it, about $9, and the judgment then ob-
tained was docketed and an execution issued to the sheriff. It
was shown that the sheriff adjourned the sale so that informa-
tion might be conveyed to the defendants of the sale, and the
chancellor finds that they were so informed; but he says that
he cannot believe that they understood and believed that the sale
would take place, and he finds from the evidence and circum-
stances that it appears that they did not believe it, and, there-
upon, he finds as a fact that they were under a mistake and
ought not to be punished by a loss so great to them as that sale,
if allowed to stand, will inflict. The property was bought in for
$52 and was worth, the chancellor finds, $1,500.

Before this doctrine can be applied to any case it must cer-
tainly appear in such case as the fundamental fact that there has
been a gross inadequacy of price. It should be noted in the
case in hand that the complainant's proofs are barren of any evi-
dence saving his own as to the value of his property, whereas the
defendant not only produces his own evidence but that of other
witnesses, one of whom, at least, a real estate agent, is entirely
impartial so far as the proofs show, and that such evidence on
the part of the defendant places the value of the property at
not over $11,500, whereas the complainant testifies that it is
worth at least $14,000.

It is not disputed that at the time of the sale there were, in-
cluding the mortgage debt, encumbrances amounting to $13,-

049.78. If to this is added the $600 bid by Scutellaro at the sale, we have a total of $13,649.78. So that even if the complainant's value be taken as the true one, it cannot be said that there was any gross inadequacy of price, or, in fine, any inadequacy whatever.

There was a suggestion on the part of the complainant that the mechanics' liens, or some of them, were not sustainable, but the proofs are barren of any evidence from which this court could find that such was the fact.

The next essential for one seeking the application of the doctrine above stated, after he has established gross inadequacy of price, is to show that he was under some mistake or misapprehension which caused him to fail to protect himself at the sale. I do not find that this complainant was, properly or justifiably, under any mistake or misapprehension. Before the writ of execution was issued out of the common pleas the attorneys of the judgment creditors notified him that the judgment had been docketed, and that unless he settled it they would issue an execution and sell his property. He paid no attention to this. Thereafter an execution was issued, and the deputy sheriff in levying the same actually notified the defendant, and told him that unless he went to the sheriff's office and paid the money his property would be sold. After the execution was issued and levied, and the sheriff had informed him as aforesaid, another letter was written to him by the attorneys of the creditor in which they notified him that unless he settled the judgment they should instruct the sheriff to advertise his property for sale. And, again, he was notified by letter that unless he paid the judgment the sheriff would be directed to sell him out on execution. His only answer to all this information which was conveyed to him is that he had gone to a lawyer to have the judgment opened and supposed that the lawyer was taking care of him, and that the lawyer had told him not to do anything. There is no attempt to secure the evidence of the lawyer, nor is there any corroboration of what the complainant testifies to in this respect, nor does he specifically testify that the lawyer was taking any proceeding after he attempted to open the judgment (in which attempt he failed) to further stay the due process of law, or to

interfere with the judgment creditor taking the proper steps to collect his judgment. Nor does it appear that the judgment debtor, when he received the numerous notices that he did that his property would be sold, consulted the lawyer, as it was his duty to do if it was true that the lawyer had been retained to protect him, or that he called these communications to his lawyer's attention, or himself paid any attention to them whatever.

I cannot find, therefore, in this case what Chancellor Zabriskie found in the *Kloepping Case,* namely, that the defendant believed that the property would not be sold; in fact I think that he must have believed, if he was capable of receiving any impression and of having any mental operations whatever, that unless he paid the debt his property would be sold.

I do not, therefore, think that it would be proper or in keeping with the due administration of law to relieve a judgment debtor, under the circumstances disclosed in this case, from the consequences of his own negligence and carelessness. I do not think it would be proper to hold that he was, legally speaking, under any mistake or misapprehension. That the negligence or carelessness of his attorney, if there was any such, must be attributed to him is too well settled to require discussion. The citations will be found collected in *16 Am. & Eng. Encycl. L. (2d ed.)* 392.

Even if there was proof—which there is not in this case— that the property was sacrificed, I do not think it is a proper case in which to extend the aid of this court. If it is a proper case, then I cannot conceive of any case in which a sheriff's sale under an execution at law could stand if the defendant asserted that he did not have belief that the property would be sold, and I am sure that to extend the jurisdiction so as to produce this result is not in keeping with the spirit animating this court with respect to this subject.

The courts have frequently called attention to the necessity of having sheriffs' sales or judicial sales upheld unless there is some strong reason for setting them aside, and have pointed out that the purchaser at an official sale becomes invested with a fixed and definite legal right, of which he should not be deprived except upon some legal or equitable ground. *Chamberlain* v.

*Larned, 32 N. J. Eq. (5 Stew.) 295 (Court of Errors and Appeals, 1880)*; *Morrisse* v. *Inglis, 46 N. J. Eq. (1 Dick.) 306 (Court of Errors and Appeals, 1889)*; *Bethlehem Iron Co.* v. *Philadelphia and Seashore Railway Co., 49 N. J. Eq. (4 Dick.) 356 (Chancellor McGill, 1892)*; *Hunt* v. *Swayze, 55 N. J. Law (26 Vr.) 33 (Supreme Court, 1892)*; *Zimmerman* v. *Place, 61 N. J. Eq. (16 Dick.) 273 (Chancellor Magie, 1901)*; *Ryan* v. *Wilson, 64 N. J. Eq. (19 Dick.) 797 (Vice-Chancellor Reed, 1902).*

There are many jurisdictions in which one whose land has been sold by judicial process has a certain length of time within which to redeem the same. This right is created and regulated by statute. There is no such statute in New Jersey. The court cannot legislate. The complainant herein, in my view of the circumstances and the law, is seeking nothing more or less than the right to redeem. He does not show any existing equity, but does disclose a situation which demonstrates, perhaps, the advisability of the creation of a new equity, namely, the right to redeem property sold by judicial process. I cannot find any authority in our law establishing any such right.

I will advise an order denying the motion for a preliminary injunction.