159 N.J. Super. 329 (1978)
387 A.2d 1254
TONY E. RANIERE AND MARGARET RANIERE, PLAINTIFFS,
v.
I & M INVESTMENTS INC. AND THE CENTRAL JERSEY BANK AND TRUST COMPANY, A BANKING CORPORATION, AND COLONIAL MORTGAGE SERVICE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 2, 1978.
*331 Mr. Daniel O'Hern for plaintiffs (Messrs. Abramoff, Apy & O'Hern, attorneys).
Mr. Frederick L. Blankenhorn for defendant Central Jersey Bank and Trust Company.
Mr. Steven Pfeffer for defendants I&M Investments Inc. and Colonial Mortgage Service Company (Messrs. Matthews, Levin, Shea & Pfeffer, attorneys).
*332 YACCARINO, J.S.C.
This matter comes before the court on motion by defendant Central Jersey Bank and Trust Company seeking an order dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted. Plaintiffs filed a cross-motion for summary judgment setting aside the sheriff's sale on the grounds that execution was not made on plaintiffs' personalty prior to execution on the realty in question.
In April 1975 plaintiffs' daughter Kathleen Dunay, as borrower, executed and delivered to defendant Central Jersey Bank and Trust Company a promissory note in the face amount of $4,536. Plaintiffs executed the note as comakers. Ms. Dunay made payments against the note, reducing it to approximately $1,144 before defaulting on her obligation. On January 13, 1977 Central Jersey Bank and Trust Company instituted an action on the note against Kathleen Dunay, Tony Raniere and Margaret Raniere in Monmouth County District Court. Judgment in the sum of $1,370.33 was entered against those defendants on February 17, 1977, and docketed in the Superior Court on February 24, 1977, under docket number D.J. 18448-76.
By letter dated Friday, March 4, 1977, former counsel for the Central Jersey Bank and Trust Company forwarded to the Monmouth County Sheriff's Office the following communication:
Enclosed please find original and three copies of Writ of Execution, together with metes and bounds description of premises owned by the defendants Tony Edward Raniere and Margaret Raniere. Please have the Deputy levy on the real estate, and advise.
The writ was received by the Monmouth County Sheriff's Office in Freehold, New Jersey, at 10:39 A.M. on Monday, March 7, 1977. It contained the standard language commanding the sheriff to:
* * * satisfy the said judgment out of the personal property of the said judgment debtor within your County; or if sufficient personal *333 property cannot be found, that out of the real property in your County belonging to such judgment debtor at the time when the said judgment was so docketed in the Office of the Clerk of the Superior Court, or at any time thereafter, in whose hands soever the same may be, and you do pay the said moneys levied by you to the said The Central Jersey Bank and Trust Company, a banking corporation. * * *
However, the return writ indicates that at 11:15 A.M. on the very same day the deputy sheriff levied upon certain land and premises owned by plaintiffs, Tony and Margaret Raniere, and commonly known as 12 Elizabeth Parkway, Eatontown. New Jersey. By letter dated Monday, March 7, 1977, the sheriff's office advised the bank's attorney that "a levy was made on the realty in accordance with description furnished this office."
The execution sale, originally scheduled for May 9, 1977, was adjourned to May 23, 1977, at which time the subject premises were purchased by Lawrence Ariando with a bid of $1,410.07. The total sum due the Central Jersey Bank, together with interest and costs, amounted to $1,410.07. The premises were assessed at $40,000 and were subject to an $8,000 mortgage and a financing statement in the sum of $1,915.60. The successful bid was assigned to defendant I&M Investments Inc., which paid off existing liens and placed a $23,400 mortgage on the premises in favor of defendant Colonial Mortgage Service Company.
On August 15, 1977 plaintiffs filed a verified complaint seeking to restrain defendant I&M from taking possession of or conveying the subject premises. Plaintiffs allege that they were never served with the summons and complaint in the county district court action and had no knowledge of any proceedings against them until shortly before July 21, 1977, when they were notified by their former mortgagee that its mortgage had been paid off by a third party. Plaintiffs therefore demand judgment setting aside the sheriff's sale and vacating the Superior Court and District Court judgments entered against them. Defendant Central Jersey Bank and *334 Trust Company moves to dismiss the complaint for failure to state a cause of action against it. For the reasons that follow, the court denies defendant's motion and enters summary judgment in favor of plaintiffs, vacating the May 23, 1977 sheriff's sale.
At common law real property was not subject to execution. Alt v. Kwiatek, 128 N.J. Eq. 469, 471 (Ch. 1941); Voorhees v. Chaffers, 24 N.J.L. 507, 509 (Sup. Ct. 1854). In 1743 the General Assembly of the Province of New Jersey made real estate chargeable with debts and liable to be sold for their satisfaction, and authorized the issuance of executions commanding the sheriff to make sale of the land for that purpose. Neville's Laws, 279-81; Voorhees v. Chaffers, supra; Ackerson & Fulop, 20 N.J. Practice § 1889 (1973). The Legislature of the State of New Jersey enacted a statute in 1799 making real estate subject to execution for debts, "coupled with the condition, however, which we find in our system, providing for the exhaustion of the personalty prior to the sale of the land." Bulat v. Londrigan, 63 N.J. Eq. 22, 27 (Ch. 1902), aff'd o.b. 65 N.J. Eq. 718 (E. & A. 1903); Palladino v. Hilpert, 72 N.J. Eq. 270, 275 (Ch. 1906).
In 1846 the act was amended to require that in every writ of execution against real estate the sheriff shall be commanded to satisfy the debt out of the goods and chattels located within his county, and if sufficient personalty cannot be located within the county, he may proceed against the lands of the debtor. The act further provided that the judgment debtor had the right to require the sheriff to sell his real estate before selling his goods and chattels. Rev. Stat. of 1846, at 660. The obvious reason was that in some instances it would work a greater hardship on the debtor to have his personalty and implements of trade sold than to have his real estate disposed of. Bulat v. Londrigan, supra, 63 N.J. Eq. at 27. The option was therefore given to the judgment debtor.
*335 The Legislature took further steps to insure against indiscriminate seizures of debtors' realty. Thus, the General Statutes of 1877, § 77 at 1228, required that before a judgment could be docketed as a lien against the debtor's land, the judgment creditor or his attorney had to file the following documents with the clerk: a transcript of the proceedings which led to judgment; a copy of the constable's return writ, endorsed to the effect that he could not find sufficient personal property of the debtor within the county to satisfy the judgment, and an affidavit of the creditor or his attorney stating the amount due on the judgment and his belief that the debtor is not seized of sufficient goods and chattels from which to satisfy the debt. A docketing which did not fulfill these three requirements was utterly void. Tasto v. Klopping, 43 N.J.L. 448 (E. & A. 1881).
In 1882 the act was amended to provide that the filing of a statement containing the names of the parties and court, the amount of the judgment and the dates of the judgment and issuance and return of execution would be sufficient to satisfy the prior transcript requirement. Gen. Stat. of 1882, §§ 4 & 5 at 1260. In construing the legislation the court in Grimshaw v. Carroll, 62 N.J.L. 730 (E. & A. 1898), determined that the requirement of an affidavit had not been abrogated. The court concluded:
Bearing in mind that the object of docketing a judgment in the common pleas is to reach the debtor's lands, and that the legislative policy in this state has generally been, not to resort to lands for the satisfaction of judgments if goods and chattels are available, we think the legislature intended to leave untouched the requirement of this affidavit as some safeguard against the unnecessary alienation of the debtor's lands. [at 732]
The present statute, N.J.S.A. 2A:17-1, clearly and unequivocally expresses the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and chattels located within the county to satisfy the judgment and costs. The statute reads:
*336 In every writ of execution which shall be issued against real estate, the Sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.
Whenever the word "shall" appears in a statute, it creates a presumption that what is thus commanded must be done. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166 (1954); Cryan v. Klein, 148 N.J. Super. 27, 31 (App. Div. 1977); Diodato v. Camden Cty. Park Comm'n, 136 N.J. Super. 324, 327 (App. Div. 1975). Furthermore, inasmuch as our statute allowing execution on real property is in contravention of common law, it must be strictly construed. State v. Court of Common Pleas, 1 N.J. 14, 22 (1948); Boileau v. De Cecco, 125 N.J. Super. 263, 268 (App. Div. 1973), aff'd 65 N.J. 234 (1974); Floral Park Tenants v. Project Holding, Inc., 152 N.J. Super. 582, 591 (Ch. Div. 1977). The statutory language employed in N.J.S.A. 2A:17-1 leaves no room for equivocation. The statute mandates that the sheriff exhaust all personalty of the debtor that can be located within the county before levying and executing against the debtor's realty.
The duties of an officer selling property at an execution sale are ministerial in nature and the officer acts solely by virtue of the statutory authority conferred. Quinn v. S.S. Jian, 235 F. Supp. 975, 977 (D. Md. 1964); Daniels v. Yelverton, 239 N.C. 54, 79 S.E.2d 311, 314 (Sup. Ct. 1953). A material departure from the positive command of the statute renders the execution void. 5A Thompson on Real Property, § 2751 (1957 and Supp. 1977); 30 Am. Jur.2d, Executions, § 32 (1967 and Supp. 1977). If the execution *337 is void, and not merely voidable, the resultant sale is absolutely void and the purchaser, regardless of good faith, acquires no title. 30 Am. Jur.2d, Executions, §§ 310, 434 (1967 and Supp. 1977); Thompson, supra.
Our statute, N.J.S.A. 2A:17-1, is compulsory, not directory, in language. It mandates that the sheriff exhaust locatable personalty within the county before executing on realty. In the present case it is evident that the Sheriff's Office made no effort whatsoever to execute on the personalty of plaintiffs. Indeed, the evidence indicates that the deputy sheriff levied on plaintiffs' realty within one hour of his receipt of the writ of execution. Moreover, present counsel for the judgment creditor bank candidly admits that no supplementary proceedings were conducted to ascertain the nature and value of any property owned by plaintiffs. The bank's attorney simply furnished a metes and bounds description of plaintiffs' realty and directed the sheriff to levy and execute thereon. R. 4:59-1(d) and R. 6:7-2 are specifically designed to provide the judgment creditor with a fast and inexpensive method of discovering the assets of the judgment creditor. Yet this judgment creditor, like so many others, chose to forego a supplementary proceeding and instead directed the sheriff to levy and execute initially and exclusively against the plaintiffs' real property. Such a practice cannot be tolerated.
It is the holding of this court that an execution sale against realty held without a prior, good faith attempt to locate, levy upon and execute against personalty of the judgment debtor located within the county is in direct violation of the positive command of the Legislature and is therefore void. N.J.S.A. 2A:17-1. The vendee at such a sale, although a bona fide purchaser for value, acquires absolutely no title thereby. In order to satisfy the requirements of N.J.S.A. 2A:17-1 the judgment creditor or his attorney must make a good faith attempt to ascertain the location of the debtor's personalty within the county and supply this information to the sheriff along with the writ of execution. *338 Before levying and executing on the debtor's realty the sheriff must return a writ of nulla bona, certifying that he has made a strict and diligent search and has been unable to locate any personalty of the debtor within the county.
Inasmuch as the Central Jersey Bank and Trust Company and the sheriff's office totally neglected to pursue plaintiffs' goods and chattels prior to the execution against realty, the execution sale of the subject premises held on May 23, 1977 was null and void. The successful bidder and his assignee, I&M Investments Inc., acquired absolutely no title thereby. It is therefore the order of this court that the execution sale held on May 23, 1977 be vacated. Palladino v. Hilpert, supra; Voorhis v. Terhune, 50 N.J.L. 147, 158 (E. & A. 1887). Summary judgment will be granted in favor of plaintiffs, declaring that the deed acquired by defendant I&M Investments Inc. is null and void and cancelled of record.
It is further ordered that defendant Central Jersey Bank and Trust Company is to reimburse defendant I&M Investments Inc. in an amount equal to all sums advanced to the sheriff as a result of the sale held on May 23, 1977. The plaintiffs are ordered to repay defendant I&M in full for the cost of removing the $8,000 mortgage held by Colonial First National Bank and the $1,900 lien of Sears, Roebuck Co.
Finally, one of the counts of plaintiffs' complaint seeks to vacate the Monmouth County District Court judgment entered in the case of Central Jersey Bank & Trust Co. v. Kathleen Dunay, Tony Raniere and Margaret Raniere, Docket 780-59. The basis for the relief sought by plaintiffs is the allegation that they were never served with a summons and complaint in that action. Such an application is not a proper matter for consideration by this court. R. 4:50-1 provides that a court may vacate a final judgment on motion by an aggrieved party. This procedure is expressly made applicable to county district court judgments by virtue of R. 6:6-1. Furthermore, it has been held that a motion for *339 relief from judgment should be heard by the judge who entered the judgment. Quagliato v. Bodner, 115 N.J. Super. 133, 137 (App. Div. 1971). Since the grounds advanced by plaintiffs are clearly within the purview of R. 4:50-1, this court is dismissing without prejudice that part of plaintiffs' complaint which seeks to vacate the county district court judgment. Plaintiffs may move for such relief before the Monmouth County District Court.