**In the Matter of Irving SILVERMAN, Bankrupt.**

**In the Matter of Dorothy SILVERMAN, Bankrupt.**

**Edward A. GENZ, Trustee, Plaintiff,**

**v.**

**HALLMARK CARDS, INC., Lionel Solomon and Sheila Solomon, State of New Jersey, Beach Haven National Bank & Trust Co., and Gibson Greeting Cards, Inc., Defendants.**

**GIBSON GREETING CARDS, INC., Plaintiff,**

**v.**

**Edward A. GENZ, Trustee, Defendant.**

**HALLMARK CARDS, INC., Plaintiff,**

**v.**

**Edward A. GENZ, Trustee, Defendant.**

**Bankruptcy Nos. 78–3121, 78–3122.**

United States District Court,
D. New Jersey.

Oct. 14, 1980.

Edward A. Genz, Manasquan, N. J.,
Blankenhorn & Ragan, Asbury Park, N. J.,
for Edward A. Genz, Trustee.

Alan C. Sugarman, Asbury Park, N. J.,
for all other parties.

## OPINION

DEBEVOISE, District Judge.

Gibson Greeting Cards, Inc. and Hallmark Cards, Inc. appeal from an order of the United States Bankruptcy Court granting a superior lien to the Trustee in Bankruptcy in the real property of the bankrupts, Mr. and Mrs. Irving Silverman, located at 45 Flipper Avenue, Manahawkin, New Jersey and granting leave to the Trustee to proceed with sale.

Gibson and Hallmark contend they have valid and superior liens in the Silvermans' real property because they executed on judgments more than four months before the adjudication of bankruptcy. The Trustee in Bankruptcy, however, argues that the appellants' executions were void because the Sheriff levied on the judgment debtors' real property before a good faith attempt had been made to locate and levy upon their personalty, in contravention of New Jersey law. The Trustee further claims that as a hypothetical judgment creditor, pursuant to Section 70 of the Bankruptcy Act of 1938, 11 U.S.C. § 110, he has a superior lien in the property. The sole issue on review is whether the Bankruptcy Judge properly determined the appellants' execution to be void under New Jersey law.[1]

---

1. District Court review of Bankruptcy Court decisions is provided for by 11 U.S.C. § 67. The Rules of Bankruptcy, Rule 810 provides the scope of review: "Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to

On June 22, 1977, Gibson Greeting Cards, Inc. obtained a default judgment in the amount of $10,503.71 against Irving and Dorothy Silverman in the Superior Court of New Jersey, Law Division, Ocean County. On August 8, 1977, Hallmark Cards, Inc. obtained a judgment against the Silvermans for $43,670.43 in the same court. Subsequent to obtaining their judgments, Gibson and Hallmark obtained standard writs of execution from the Superior Court, issued on July 12, 1977 and August 23, 1977 respectively. These writs directed the Sheriff of Ocean County to

> satisfy the said judgment out of the personal property of the said judgment debtor within your County; or if sufficient personal property cannot be found, then out of the real property in your County belonging to such judgment debtor.

Gibson's writ of execution was returned by the Sheriff unsatisfied, with the following notation:

> Kindly forward description of assets you wish us to levy upon, also advise if you wish us to levy upon real property at the same time. Charge $25.00 plus mileage, statement & return.

The Hallmark writ, the appellants contend, was never delivered to the Sheriff for execution at all.[2]

The appellants then sought and obtained an order of discovery of the Silvermans' assets from the Superior Court of New Jersey, pursuant to Rules 4:59–1(d)[3] and 6:7–2(a)[4] of the New Jersey Court Rules. Examination of the debtors was originally scheduled for January 26, 1978 but was periodically postponed, at the request of the Silvermans, until August 23, 1978.

On August 16, 1978, before examination of the debtors, Gibson and Hallmark caused to be issued from the Superior Court of New Jersey two alias writs. The appellants claim that these writs were not delivered to the Sheriff for execution until August 23, 1978, after the examination in aid of judgment had been completed.[5]

The August 23 examination was conducted by Attorney Kathleen Wall upon standard form interrogatories prepared by her law firm. Mr. Silverman advised her at the time, Attorney Wall testified by affidavit, "that the information that he was giving me applied to his wife as well as to himself and that the responses he gave to the questions directed toward him applied to his

---

the opportunity of the referee to judge of the credibility of the witnesses."

2. This contention appears to be raised for the first time on appeal. There is no supporting evidence in the record, and the Bankruptcy Judge made a finding of fact that *both* writs were returned unsatisfied.

3. "In aid of the judgment or execution, the judgment creditor or his successor in interest appearing of record, may examine any person, including the judgment debtor, by proceeding as provided by R. 6:7–2, or by these rules for the taking of depositions. If the deposition is taken on interrogatories, the notice of the taking thereof may contain a statement that the judgment debtor or deponent need not appear pursuant to the notice, provided before the time fixed therein, he serves upon the judgment creditor or his attorney answers under oath to the interrogatories served. The court may make any appropriate order in aid of execution."

4. "In aid of the judgment or execution the court may, upon the filing by the judgment creditor or his successor in interest ... of a

petition verified by him ... stating the amount due on the judgment, make an order requiring the judgment debtor or any other person to appear and make discovery on oath concerning the judgment debtor's property before a judge or [an] attorney of this State designated in such order, at a time and place therein specified ..."

5. The Bankruptcy Court made no finding of fact as to when the writs were transmitted to the Sheriff, and there is no evidence in the record submitted by the Bankruptcy Judge on the subject. The Bankruptcy Judge did note in a letter to the Court Clerk, however, that he did not include exhibits requested for inclusion in the record by Mr. Sugarman, the appellants' attorney "for the reason that such exhibits are in his possession or in the possession of the Trustee." Mr. Sugarman has submitted, in an appendix to his brief, a letter to the Sheriff dated August 23, 1978, purporting to be a cover letter for the writs. The appellee has not objected to the inclusion of this material in the record; therefore it is assumed to have been presented in the Court below.

own financial status as well as to that of his wife."

The appellants' standard form interrogatories, which have been submitted as part of the record on appeal, contain no generalized question as to the personal property owned by the debtor. The interrogatories do, however, contain numerous particular questions about the debtor's ownership of such personalty as motor vehicles, other vehicles or trailers, aircraft, firearms, coin or stamp collections, tools or equipment, sporting goods or equipment, paintings or other art objects, interests in businesses, bank accounts, securities, patents or copyrights, and insurance policies. Notably missing from the interrogatories are inquiries into the debtor's cash on hand and ownership of furniture, appliances, and other household goods. The interrogatories appear to have been thoroughly and conscientiously covered. Virtually all areas in which information was not forthcoming were marked "NO" or "N/A." The inference can be drawn, therefore, that Attorney Wall addressed all the questions contained in the interrogatories in her examination of Mr. Silverman.

■ The appellants have submitted for consideration by this Court on review an affidavit made by Attorney Kathleen Wall on September 8, 1980 supplementing the information contained in the record about the scope of her inquiry into the Silvermans' personal property. The Trustee in Bankruptcy objects to the affidavit on the ground that the District Court should not consider on review any evidence not before the Bankruptcy Court at the original hearing. This is indeed the law, *In Re Mid– Center Redevelopment Corp.*, 383 F.Supp. 954, 957 n. 3 (D.N.J.1974),[6] and the affidavit will not be considered here.

On August 23, 1978, presumably after the conclusion of the Silvermans' examination, the appellants forwarded the alias writs of execution, issued upon August 16, 1978, to the Sheriff of Ocean County with explicit instructions to levy upon the real property located at 45 Flipper Avenue, Manahawkin. On August 28th, 1978, the appellants sent the following letter to the Sheriff in connection with the Gibson and Hallmark levies:

Gentlemen: Pursuant to your request of this date, please be advised that we conducted a Supplementary Proceeding in this matter and ascertained that there is no personal property of the Defendant, and you are therefore instructed to issue Execution on the real property pursuant to our letters of August 23rd, 1978.

On August 28, 1978, the record indicates, the Sheriff did levy upon the debtors' real property and filed the execution with the Superior Court. On November 29, 1978, the Sheriff levied upon personal property contained in the Silvermans' house, including a refrigerator, washer, dryer, living room sofa, and other household furniture and appliances. This execution was also filed with the Superior Court.

On December 22, 1978, Mr. and Mrs. Silverman were adjudicated bankrupts, having filed Voluntary Petitions under Chapter III of the Bankruptcy Act, 11 U.S.C. §§ 21–35. The Trustee in Bankruptcy thereby acquired title to the property at 45 Flipper Avenue and filed a complaint returnable April 23, 1979 ordering all defendants, including Gibson and Hallmark, to prove their liens. On April 24, 1979, Gibson and Hallmark each filed complaints to fix their liens and for a judgment permitting them to sell the real estate.

After considering the claims of all the parties, the Bankruptcy Court held that, because the Sheriff executed upon the real property before exhausting the personal property of the debtors, and because discovery was held after the writs of execution

---

**6.** *See* Rule 806, Rules of Bankruptcy; Advisory Comments to Rule 810, Rules of Bankruptcy: "Rule 810 makes an important change in not retaining the provision of General Order 47 which authorizes receipt of further evidence by the district court in connection with a review of a referee's order or findings. This change is meant to enhance the dignity of the office of bankruptcy referee as that of the principal judge of the bankruptcy court. Rule 810 requires the reviewing court to give due regard to the opportunity of the referee to judge the credibility of the witnesses."

were issued rather than before, the appellants' executions were void under *Raniere v. I & M Investments, Inc.*, 159 N.J.Super. 329, 387 A.2d 1254 (1978), *aff'd*, 172 N.J.Super. 206, 411 A.2d 719 (1980). The Bankruptcy Court further ruled that, under Section 70(c) of the Bankruptcy Act, 42 U.S.C. § 110, the Trustee in Bankruptcy held in the bankrupts' property the rights not only of a hypothetical judgment creditor but of a hypothetical *levying* judgment creditor as well. *Matter of Blease*, 605 F.2d 97 (3rd Cir. 1979). Under the New Jersey law of lien priority, therefore, which is the applicable law in bankruptcy proceedings, *Carina Mercury, Inc. v. Igaravides*, 344 F.2d 397 (3rd Cir. 1965), the Trustee obtained a lien superior to that of the appellants, and the Bankruptcy Court permitted him to proceed with sale.

Gibson and Hallmark assert that the Bankruptcy Court erred in holding that *Raniere v. I & M Investments, Inc.* required the invalidation of their executed liens in the Silvermans' real property. Interpreting N.J.S.A. 2A:17–1,[7] the Superior Court in *Raniere* held that:

> an execution sale against realty held without a prior, good faith attempt to locate, levy upon and execute against personalty of the judgment debtor located within the county is in direct violation of the positive command of the legislature and is therefore void. (cite omitted). The vendee at such a sale, although a bona fide purchaser for value, acquires absolutely no title thereby. In order to satisfy the requirements of N.J.S.A. 2A:17–1 the judgment creditor or his attorney must make a good faith attempt to ascertain the location of the debtor's personalty within the county and supply

this information to the sheriff along with the writ of execution. Before levying and executing on the debtor's realty the sheriff must return a writ of *nulla bona*, certifying that he has made a strict and diligent search and has been unable to locate any personalty of the debtor within the county. *Id.* 159 N.J.Super. at 337–38, 387 A.2d 1254.

The appellants argue that *Raniere* should not be determinative in their case because it dealt with an execution *sale* made before any attempt had been made to locate or levy upon personalty. Here, the appellants point out, no sale was made before personalty was levied upon. Moreover, given the size of the judgments held by Gibson and Hallmark, levy and sale upon the debtors' real property was inevitable in any event. Even if the personalty had been levied upon first, it would never have fully satisfied the outstanding judgments of more than $50,000.

Under the rationale of *Raniere*, however, the appellants' argument cannot stand. At common law, the New Jersey court observed, execution upon real property was not permitted at all. N.J.S.A. 2A:17–1 is in contravention of common law, and therefore must be strictly construed. The statutory language, the Court held, "leaves no room for equivocation. The statute mandates that the sheriff exhaust all personalty of the debtor that can be located within the county before *levying and executing* against the debtor's realty." *Id.* at 336, 387 A.2d 1254 (emphasis added). The Court went on to point out that "[a] material departure from the positive command of the statute renders the *execution* void." *Id.* (emphasis added). Sales made after executions not in compliance with the statute were invalidated only as a consequence of the void execution.[8] Clearly, then, *Raniere*

---

**7.** "In every writ of execution which shall be issued against real estate, the Sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattel in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be

made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same."

**8.** *Raniere*, 159 N.J.Super. at 336-37, 387 A.2d 1254, reads: "If the execution is void, and not merely voidable, the resultant sale is absolutely void and the purchaser, regardless of good faith, acquires no title."

renders void an execution, as well as a sale, made prior to a good faith attempt to locate and levy upon a debtor's personalty. Even though the result may be harsh in some cases, *Raniere* ensures that judgment creditors will follow the mandate of N.J.S.A. 2A:17–1 with the greatest exactitude.

Even if *Raniere* applies, the appellants argue, their execution should not be invalidated because it was levied only after a good–faith examination of the debtors had been made. A crucial preliminary question which must be addressed before the appellants' argument can be considered is when, for purposes of *Raniere*, "execution" is accomplished. The Bankruptcy Court clearly held that the relevant date before which a good faith attempt to locate personalty must be undertaken was the date of *issuance* of a *writ of execution*. Citing *Davis Acoustical Corp. v. Skulnik*, 131 N.J.Super. 87, 92, 328 A.2d 633 (App.Div.1974), the Bankruptcy Court observed that "Rules 4:59–1(d) and 6:7–2(a) of the New Jersey Court Rules are available to a judgment creditor to assist him in locating assets upon which a *writ of execution* can be issued." (emph. added). *Matter of Silverman*, 2 B.R. 326, 332. In fact, the *Skulnik* case held that the New Jersey Court Rules afford a judgment creditor discovery "to assist him in locating assets on which *execution* can issue." 131 N.J.Super. at 91–92, 328 A.2d 633. Moreover, the Court Rules themselves speak not in terms of discovery in aid of the issuance of a writ of execution but in aid of the execution itself. *See* New Jersey Court Rules 4:59–1(e) (formerly 4:59(1)(d)) and 6:7–2(a).

■ As a practical matter, writs of execution are applied for by the judgment creditor pursuant to New Jersey Court Rules 6:7–1 and issued by the Court not directly to the Sheriff but to the creditor himself. Execution is accomplished only after the creditor delivers the writ to the Sheriff and the Sheriff actually levies upon the debtor's property. To engage in the discovery provided for by the New Jersey Court Rules after obtaining a writ of execution but before delivering it to the Sheriff with instructions as to the property to be levied upon would appear, therefore, to be fully consonant with sound legal practice.

The Bankruptcy Court was in error, therefore, in holding that "the judicial purpose, as stated in *Skulnik, supra,* was not served by conducting discovery proceedings after the writs were issued; the sheriff had no notice of what items of personalty upon which he could levy." 2 B.R. 326, 332. In fact, the Sheriff would have notice of the items on which to levy as long as discovery is completed before he executes the writs.

■ The question remains, however, whether the appellants made, for purposes of *Raniere*, a "good faith attempt to locate, levy upon and execute against personalty of the judgment debtor," 159 N.J.Super. at 377, 387 A.2d 1254, when they conducted their August 23, 1980 examination. The Bankruptcy Court held that, even if the examination had been held in a timely fashion, the information obtained "would have been insufficient to direct the sheriff to levy properly upon the bankrupts' assets under N.J.Stat.Ann. § 2A:17–1 ... It was actually necessary for the sheriff to make a physical inventory, which he is, by the very statute under which levy is made, ordered to do." His conclusion was that the propounded interrogatories "were of no value". 2 B.R. at 332.

In light of the alternate nature of the Bankruptcy Court's judgment that the appellants' efforts to locate personalty did not measure up to the standards of *Raniere*, and the somewhat incomplete state of the record on that point, this Court will remand this matter to the Bankruptcy Court, pursuant to Rule 810 of the Bankruptcy Rules, for reconsideration of the question whether the appellants acted in good faith.

At this time it might be appropriate for the Bankruptcy Court to consider an application to supplement the record to include evidence which appellants sought unsuccessfully to introduce on this appeal, or any other material relevant to the issue of the good faith effort to locate personalty.[9]

---

**9.** The Bankruptcy Judge's decision that the effort to locate personalty was inadequate rested, in part, upon the sheriff's failure to conduct a "physical inventory, which he is, by the very

statute under which levy is made, ordered to do." Passing the question whether the sins of the sheriff may be visited upon the creditor, neither N.J.S.A. § 2A:17–1 nor *Raniere* appear to require an inventory, but only a "strict and diligent search." *Raniere, supra*, at 338, 387 A.2d 1254. This, too, is a matter for factual development in the Bankruptcy Court.