## In re Carmella Ursula ITALIANO, Debtor.

## Harry KELLMAN, Trustee for Carmella Ursula Italiano, Plaintiff,

v.

## Vincent J. PALESE, Defendant.

Bankruptcy No. 85–05350.

Adv. No. 85–0254.

United States Bankruptcy Court, D. New Jersey.

Oct. 23, 1986.

Archer & Greiner by Nona L. Ostrove, Haddonfield, N.J., for Harry Kellman, Trustee.

Jubanyik, Varbalow, Tedesco & Shaw by Barry N. Shaw, Collingswood, N.J., for Vincent J. Palese.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter presently before the court is in connection with a complaint filed by the Chapter 7 Trustee of the estate of Carmella Ursula Italiano. Before the court is the Trustee's motion for judgment on the pleadings and alternatively for summary judgment and a cross-motion of the defendant herein for judgment on the pleadings and alternatively for summary judgment. The complaint was filed by Harry Kellman, the Trustee of the debtor's estate. By his complaint, the Trustee seeks to void any lien claimed by Vincent J. Palese (Palese) against certain real estate of the debtor Carmella Ursula Italiano located at 825 Mercer Street, Cherry Hill, New Jersey, and determining that Palese is an unsecured creditor of the estate.

On February 24, 1986, a hearing on the instant matter was conducted before this court. The Trustee at that time stipulated to the facts set forth by the defendant, Palese, except for the exact amount of the Palese claim. Accordingly, no testimony was taken and the motions for summary judgment and judgment on the pleadings were submitted upon the following stipulated facts.

On December 13, 1982, Bleeps, Inc. sold its business, a restaurant and bar to Fait, Inc., a corporation owned or controlled by the debtor, Carmella U. Italiano and her brother-in-law, Joseph Italiano (now deceased). In order to finance the purchase of "Bleeps", Fait, Inc.,[1] the debtor and Joseph Italiano borrowed the sum of Two Hundred Seventy Five Thousand Dollars ($275,000.00) from Bleeps, Inc. evidenced by a promissory note dated December 13, 1982 repayable with interest at the rate of twelve (12%) percent per annum, in equal monthly installments of Three Thousand Twenty Eight Dollars ($3,028.00) commencing on January 13, 1983 and continuing on the same day of each consecutive month thereafter for seventy-one (71) months. (Answer of Palese Exhibit "A"). On or about April 12, 1983, the owner of the aforesaid note (Bleeps, Inc.) assigned said note to Vincent J. Palese ("Palese"). (Answer of Palese Exhibit "B").

On or about May 13, 1984 an installment became due on the aforesaid promissory note. The May, 1984 installment was not paid to Palese and, in accordance with the terms of the aforesaid promissory note, Palese made demand for payment and accelerated all payments due under said note. The aforesaid note further provides for reasonable attorneys' fees and all costs in the event of a default by the debtor Carmella Italiano.

On or about December 13, 1982, Charles E. Korostynski loaned to Fait, Inc. the sum of Twenty Five Thousand Dollars ($25,-000.00) pursuant to a certain promissory note executed on that date. The aforesaid promissory note and all of the obligations contained therein were co-signed by the debtor, Carmella Italiano. (Answer of Palese Exhibit "C"). On or about July 6, 1984, Charles Korostynski assigned to Palese all of his right, title and interest in said promissory note. (Answer of Palese Exhibit "D").

The aforesaid promissory note required payments to be made by Fait, Inc. in the amount of Eight Hundred Dollars ($800.00) per month commencing on January 13, 1983 and continuing on the thirteenth (13th) day of every month thereafter with interest at the rate of ten (10%) percent per annum until the thirteenth (13th) day of May, 1986 when the entire balance would be due and owing.

On or about March 13, 1984 the monthly installment payment due under said note was not paid. In accordance with said note, Palese subsequently made demand for payment and accelerated all payments due under said note.

The debtor signed both promissory notes as a co-maker of the notes, and also as a guarantor thereof.

On September 17, 1984, Palese filed suit against the debtor in the Superior Court, Law Division, Camden County, Docket No. L–0161981–084. On October 25, 1984, the debtor filed her answer contesting Palese's complaint. On February 14, 1985, Palese filed his motion for summary judgment against the debtor and on March 1, 1985, the Honorable E. Stevenson Fluharty, Judge of the Superior Court of New Jersey, signed an order granting summary judgment in favor of Palese against the debtor in the amount of Three Hundred Fourteen Thousand One Hundred Twenty Nine and 04/100 Dollars ($314,129.04), interest from March 1, 1985, attorneys' fees (to be certified) and costs. (Answer of Palese Exhibit "E").

As of October 11, 1985, the date of the filing of the debtor's petition, Palese asserts that there was due and owing by the debtor to Palese the sum of One Hundred Eighty Three Thousand Four Hundred Nineteen and 99/100 Dollars ($183,419.99). (Answer of Palese Exhibit "F").

In connection with the attempts by the parties to amicably resolve their differences, the debtor, at the suggestion of her attorneys, agreed to discovery by deposi-

---

**1.** Fait, Inc. filed a petition under Chapter 11 of the Bankruptcy Code on August 16, 1984 (Case No. 84–04386). The case was converted to a proceeding under Chapter 7 of the Bankruptcy Code on June 7, 1985.

tion as to her assets and liabilities on November 30, 1984. Pursuant to said deposition, Palese through counsel inquired into the extent of the debtor's assets available for the payment of the loans due him by the debtor. (Answer of Palese Exhibit "G").

In May, 1985, at a time when negotiations between the parties were not resulting in payment to Palese, Palese requested the Clerk of Superior Court to issue a writ of execution against the debtor. Accordingly, on May 31, 1985, John M. Mayson, Clerk of the Superior Court of New Jersey, issued a Writ of Execution. The Writ of Execution was directed to the Sheriff of Camden County, New Jersey, directing the Sheriff to "satisfy the said judgment out of the personal property of the judgment debtor(s) within your County, and if sufficient personal property cannot be found, then out of the real property in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed in the office of the Clerk of this Court, or at any time thereafter...." (Answer of Palese Exhibit "H").

On June 5, 1985, counsel for Palese forwarded the Writ of Execution to the Sheriff of Camden County by letter of Constance D. O'Mara, Esquire dated June 5, 1985 to William Simon, Sheriff of Camden County, which stated:

> Enclosed please find a Writ of Execution. Please levy on the debtor's personal property and real property *at the same time*. We have enclosed herewith three copies of the legal description of the real property located at 825 Mercer Street, Cherry Hill, New Jersey along with a check for your fees in this matter. If you need anything further with regard to this matter please contact the undersigned. (Emphasis in original).

The Sheriff of Camden County by letter dated June 17, 1985, advised as follows:

> Pursuant to your instructions our Special Deputy was unable to levy upon the personal property of the above defendant [Carmella Italiano] at 825 Mercer Street, Cherry Hill, N.J. because entry was refused.
>
> Please also be advised that we have on June 13, 1985 levied upon the real estate of the above defendant, by serving the son.

By letter dated after October 29, 1985 from Eleanor Simpson, Law Execution Clerk in the Office of the Sheriff of Camden County to counsel for Palese, it was confirmed that the Writ of Execution of Palese was "clocked in our office on June 6, 1985." Eleanor Simpson also stated therein:

> Also is a copy of our letter dated June 17, 1985 to you, and a copy of the real estate levy that was made on June 13, 1985.

(Answer of Palese Exhibit "H"). The debtor's 26 year old son has admitted that after consulting with his mother, the debtor, he refused entry to the Sheriff for the purpose of performing the personal property levy.

On or after the date the writ was received by the Sheriff, June 6, 1985, there were additional attempts by the parties to negotiate a resolution of their differences. However, on September 24, 1985, after Palese had determined that an amicable resolution would not be possible, Palese filed a motion with the Superior Court of New Jersey for an order authorizing the Sheriff to disable the locks on the real property of the debtor at 825 Mercer Street, Cherry Hill, New Jersey for the purpose of completing the levy on the debtor's personal property in her residence. On October 11, 1985, Judge Theodore Z. Davis, Judge of the Superior Court of New Jersey signed an Order to Disable Locks and to Gain Entrance for the Purpose of Personal Property Levy at the debtor's residence. (Answer of Palese Exhibit "I").

On that same date, October 11, 1985, the debtor, Carmella Ursula Italiano filed a petition under Chapter 7 of the Bankruptcy Code. Harry Kellman was thereafter appointed the Trustee of the debtor's estate by the United States Trustee for the District of Delaware and New Jersey.

The Trustee, in his complaint, asserts that New Jersey law requires a judgment creditor to levy upon the personal property of a judgment debtor before levying upon the real property of a judgment debtor. The Trustee argues that since Mr. Palese failed to secure a levy on the debtor's personal property, the lien Mr. Palese claims to have on the debtor's real property is void. The Trustee concludes that Mr. Palese is an unsecured creditor of the bankruptcy estate. Accordingly, the Trustee requests that this court enter an order declaring void any lien claimed by Palese against the real estate of the debtor at 825 Mercer Street, Cherry Hill, New Jersey, and determining that Palese is an unsecured creditor of the bankruptcy estate.

On January 6, 1986, Mr. Palese filed an Answer to the Trustee's adversary complaint. In his Answer, Mr. Palese claimed that he has complied with all New Jersey statutes and thus has a secured claim against the debtor's real property. Mr. Palese further argues that a sale of the debtor's real property had not been scheduled because there had been continued negotiations between the parties in an attempt to settle the parties' differences after the levy had been attached to the debtor's real property.

On January 17, 1986, the Trustee filed the present notice of motion seeking judgment on the pleadings, or in the alternative, summary judgment. The Trustee asserts that the levy on the debtor's real property is void because Mr. Palese failed to secure a levy against the debtor's personal property prior to obtaining the levy on the real property. The Trustee argues that discussions between the debtor and Mr. Palese continued from the date that the Sheriff levied upon the real property of the debtor, until September, when Mr. Palese filed his motion to disable the locks on the debtor's residence and complete the personal property levy. The Trustee further argues that the fact that Mr. Palese did not ask the Sheriff to advertise and schedule the debtor's real property for a sheriff's sale when the discussions between the parties proved unsuccessful, indicates that Mr. Palese knew that more was required in order to perfect his levy on the real property.

On January 31, 1986, Mr. Palese filed a cross-motion seeking judgment on the pleadings or in alternative, summary judgment. By his cross-motion, Mr. Palese also sought relief from the automatic stay in order to perfect a judicial lien on the personal property of the debtor. Mr. Palese argues that: (1) the levy on the debtor's real property was not a voidable preferential transfer under 11 U.S.C. § 547; (2) the trustee of the debtor's estate may not avoid the lien on the real property under 11 U.S.C. § 544(a); (3) as of June 6, 1985, Mr. Palese held a perfected judgment lien on the debtor's real property; (4) Mr. Palese was not required to levy upon and sell the personal property of the debtor before levying upon the debtor's real property; (5) Mr. Palese was a diligent judgment creditor acting in good faith with respect to the enforcement of his judgment against the debtor's real and personal property; (6) general unsecured creditors should not be granted the same status as that of a creditor holding a judicial lien upon which execution has been issued; (7) the debtor's interference with Mr. Palese's efforts to levy upon the debtor's personal property equitably estops the trustee from avoiding or invalidating Mr. Palese's lien on the debtor's real property, and; (8) the trustee's motion to invalidate Mr. Palese's lien on the debtor's property should be denied on the basis of 11 U.S.C. §§ 546(b) and 362(b)(3). The Trustee conceded that 11 U.S.C. § 547 is irrelevant to the disposition of the instant matter since all of the relevant events, including the entry of judgment, issuance of the writ, and delivery of the writ to the sheriff, occurred prior to the 90 days preceding the filing of the petition in bankruptcy.[2] The Trustee argues how-

---

2. 11 U.S.C. § 547 provides in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

ever that: (1) Mr. Palese's asserted levy on the real property of the debtor is void since Mr. Palese failed to first perfect the levy upon, and sell, the debtor's personalty; (2) there is no basis for Mr. Palese's argument that the Trustee is precluded from voiding the lien on the debtor's real property by 11 U.S.C. § 544(b), and; (3) Mr. Palese's argument that under 11 U.S.C. §§ 546(b) and 362(b)(3), he is entitled to relief from the automatic stay in order to complete his levy on the debtor's personalty and that this action will relate back to the date the Writ of Execution was delivered to the Sheriff is without merit.

The first issue to be decided by this court is whether Mr. Palese has a valid levy on the debtor's real property under N.J.Stat. Ann. § 2A:17–1. N.J.Stat.Ann. § 2A:17–1 provides:

> In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattel in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.

In the case of *Raniere v. I & M Investments, Inc.*, 159 N.J.Super. 329, 387 A.2d

1254 (Ch.Div.1978), *aff'd per curiam,* 172 N.J.Super. 206, 411 A.2d 719 (App.Div.), *cert. denied,* 84 N.J. 473, 420 A.2d 1298 (1980), the court performed a thorough analysis of N.J.Stat.Ann. § 2A:17–1. In *Raniere,* the court granted summary judgment in favor of a judgment debtor and set aside a sheriff's sale. The court based its decision upon the fact that the judgment creditor failed to execute on the judgment debtors' personalty prior to executing upon the judgment debtors' realty. In *Raniere,* the judgment creditor levied upon and sold the real property of judgment debtors. The judgment debtors alleged that they were never served with a summons and complaint, and that they had no knowledge of any proceedings against them until they were notified by their former mortgagee that their mortgage had been paid off by a third party. They did not receive this notice until almost two months after their realty had been sold.

In analyzing N.J.Stat.Ann. § 2A:17–1, the *Raniere* court noted that at common law, real property was not subject to execution. 159 N.J.Super. at 334, 387 A.2d 1254. Since N.J.Stat.Ann. § 2A:17–1 is in contravention of common law, in that it permits execution on realty, the *Raniere* court noted that the statute must be strictly construed. *Id.* at 336, 387 A.2d 1254. The court also noted that the Legislature of the State of New Jersey carefully attempted to ensure against indiscriminate seizures of debtor's realty. *Id.* at 335. The *Raniere* court stated:

> N.J.S.A. 2A:17–1, clearly and unequivocally expresses the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if

such creditor at the time of such transfer was an insider;
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

chattels located within the county to satisfy the judgment and costs.

159 N.J.Super. at 335, 387 A.2d 1254.

The *Raniere* court held that an execution against a judgment debtor's realty without a prior good faith effort "to locate, levy upon and execute against" the personalty of the judgment debtor located within the county violates N.J.Stat.Ann. § 2A:17–1, and therefore is void. 159 N.J.Super. at 337, 387 A.2d 1254. In so holding, the *Raniere* court noted that the Sheriff's Office in that case had made no effort to execute on the judgment debtor's personalty, and that the judgment creditors had not conducted supplementary proceedings to ascertain the existence or value of property owned by the judgment debtor. The *Raniere* court stated, "this judgment creditor ... chose to forego a supplementary proceeding and instead directed the sheriff to levy and execute initially and exclusively against the plaintiffs' real property. Such a practice cannot be tolerated." 159 N.J. Super. at 337, 387 A.2d 1254. The *Raniere* court noted that in order to comply with N.J.Stat.Ann. § 2A:17–1, a judgment creditor or a judgment creditor's attorney must make a good faith attempt to locate a judgment creditor's personalty within the county and supply this information to the Sheriff together with the Writ of Execution. 159 N.J.Super. at 337–38, 387 A.2d 1254. The *Raniere* court indicated that before levying and executing upon a judgment debtor's realty, a Sheriff must return a writ of nulla bona, certifying that he has made a "strict and diligent" search and had not been able to locate any personalty of a judgment debtor. *Id.* at 338, 387 A.2d 1254.

In the case of *Matter of Silverman*, 2 B.R. 326 (Bkrtcy.D.N.J.), *remanded*, 6 B.R. 991 (D.N.J.1980), the issues considered by the court were: (1) whether a sheriff properly executed a levy on real property before exhausting the personal property of the debtors, and; (2) whether discovery regarding the existence and value of a debtor's property may be held after a writ of execution has been issued. In *Matter of*

*Silverman*, two judgments had been entered against the debtors. A writ of execution was issued with regard to each judgment, and each writ was returned unsatisfied. Subsequent to the return date of each of the writs of execution, an Order compelling discovery of the debtor's assets was entered. Discovery was postponed by the debtors for approximately 8 months from January 26, 1978 until August 23, 1978. On August 16, 1978, seven days prior to the date discovery was ultimately scheduled to take place, alias writs of execution were issued. Accordingly, discovery of the debtors' assets did not take place until one year after the issuance of the first writs and one week after the alias writs of execution. On August 28, 1978, levy was made upon the real property of the debtors by the sheriff, and approximately three months later, on November 28, 1978, levy was made upon the personal property of the debtors. On December 22, 1978, approximately one month later, the debtors were adjudicated as bankrupts.

The judgment creditors in *Matter of Silverman* filed complaints to fix their liens and seeking judgment permitting the sale of the real estate upon which they had levied. The creditors argued that they had made a good faith attempt to locate the debtors' personalty prior to levying upon the debtors' realty. The creditors further argued that even if their levies of execution were invalid, their judgments against the debtors created liens which were unavoidable by the Trustee of the debtor's bankruptcy estate. The bankruptcy court in *Matter of Silverman* held that the execution against the debtors' real property was void, since the judgment creditors failed to undertake discovery of the debtors' assets prior to the issuance of the writs of execution and since the Sheriff actually executed on the realty before exhausting the debtors' personalty. That court concluded that the Trustee of the debtors' bankruptcy estate vested with all the rights of a levying judgment creditor under Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), prevailed over the prior judgment creditors because the Trustee was first in time to

properly execute against the debtors' realty. 2 B.R. at 331. The bankruptcy court stated that the Trustee was a judgment creditor holding a valid levy as of the date the debtors were adjudicated to be bankrupts. *Id.* Although the judgment creditors held valid judgment liens as of the date the debtors were adjudicated as bankrupts, they had not validly executed upon the debtors' realty as of that date. The court determined that the levy which the judgment creditors claimed to have on the debtors' realty was void because it preceeded the judgment creditors' levy upon the debtors' personalty. *Id.*

In so holding, the bankruptcy court in *Matter of Silverman* rejected the creditors' argument that they had made a good faith effort to locate the debtors' personalty, and that the debtors themselves frustrated the discovery of their personal assets by postponing the discovery proceeding. 2 B.R. at 331. The court noted that a sheriff "is clearly required" to levy upon a debtor's goods and chattels to satisfy a judgment and costs. 2 B.R. at 329. The court further stated that a sheriff may only execute against the realty of a debtor after a good faith attempt to locate and levy upon the debtor's personalty. *Id.*

The creditors in the *Matter of Silverman* appealed the judgment of the bankruptcy court. On appeal, the creditors argued that *Raniere v. T.M. Investments, Inc.,* 159 N.J.Super. 329, 387 A.2d 1254 (Ch.Div. 1978), *aff'd per curiam,* 172 N.J.Super. 206, 411 A.2d 719 (App.Div.1980) was distinguishable from the *Matter of Silverman* case since *Raniere* involved an execution sale of realty before an attempt had been made to locate the debtors' personalty, whereas in *Silverman* the realty had not been sold prior to the levy upon the debtors' personalty. The creditors further argued that the judgments which they held were so large that a levy upon the debtors' personalty would not have satisfied them, thus a levy and sale of the debtors' realty was inevitable. The district court rejected

these arguments and held that under the decision of the *Raniere* court, an execution, as well as a sale, made prior to a good faith attempt to locate and levy upon a debtor's personalty is void. 6 B.R. at 995–96. The district court acknowledged that although such a rule "may be harsh in some cases, *Raniere* ensures that judgment creditors will follow the mandates of N.J.S.A. 2A:17–1 with the greatest exactitude." *Id.* The district court held that the bankruptcy court had erred in holding that discovery proceedings could not be conducted after the writs were issued and also held that a creditor may engage in discovery regarding the existence or value of a debtor's personal property subsequent to obtaining a writ of execution, but before delivering the writ to the Sheriff with instructions regarding the property to be levied upon. 6 B.R. at 996. Finally, the district court remanded the proceeding to the bankruptcy court for reconsideration of whether the creditors made a good faith effort to locate, levy upon, and execute against the personalty of the debtors prior to their execution upon the debtors' realty. *Id.*

In *Vitale v. Hotel California, Inc.,* 184 N.J.Super. 512, 446 A.2d 880 (Law Div.), *aff'd,* 187 N.J.Super. 464, 455 A.2d 508 (App.Div.1982) the court was faced with difficulties encountered by sheriff officers in attempting to levy on personal property of a judgment debtor. The court conducted a brief overview of the execution process in New Jersey, a review of which is equally beneficial in this case:

A successful plaintiff who obtains a judgment against a defendant may cause the personal property of the defendant/judgment debtor to be seized and sold and the proceeds applied to the judgment and costs by way of execution. N.J.S.A. 2A:17–1 *et seq.* To do this, plaintiff obtains a writ of execution, directing the sheriff to levy and make a return within three months after the date of issuance. R. 4:59–1(a).[3] (A "return"

---

**3.** R. 4:59–1(a) has been revised and now provides:

"Unless the court otherwise orders, every writ of execution shall be directed to a sheriff and

is the physical return of the original writ to the court clerk, endorsed with the executing officer's brief description of what was done. 20 *N.J.Practice (Ackerson, Fulop and Lodge, Skills and Methods)* (2 ed. 1973), § 1898 at 613. In addition, the officer must file a verified statement of when and how much money was collected and the balance due on execution fees or costs. N.J.S.A. 2A:17–9).

The writ must be promptly executed upon and returned, N.J.S.A. 2A:15–20. The writ may be returned before the return date if, notwithstanding diligent effort, the judgment cannot be satisfied any further. *See* 33 *C.J.S. Executions*, § 318 at 618. Once an execution has been returned, a sheriff cannot thereafter levy upon any property under the writ. *Cook v. Wood*, 16 N.J.L. 254, 257 (Sup.Ct.1837). Nor can a valid levy be made after the return date. *Fredd v. Darnell*, 107 N.J.Eq. 249, 251 (Ch.1930). Successive executions upon the same judgment are possible. N.J.S.A. 2A:17–3; R. 4:59–1(a). Therefore, if the first seizure is insufficient, the creditor may seek an *alias* writ for levy upon other goods. *See Matthews v. Warne*, 11 N.J.L. 295, 309 (Sup.Ct.1830); *e.g., Millville Nat'l Bank v. Shaw*, 42 N.J.L. 550 (Sup.Ct.1880). Thereafter, the plaintiff may seek an unlimited number of *pluries* writs until the judgment is satisfied. 20 *N.J.Practice, supra*, § 1872 at 586. The proceeds from the sheriff's sale of seized property are paid to the judgment creditor or to his or her attorney or to the court clerk. *Id.*, § 1884 at 599, *see* R. 4:59–1(a); N.J.S.A. 2A:18–26 (county district court rule).

*Id.* 184 N.J.Super. at 518–19, 446 A.2d 880. The court further noted that it was the plaintiff judgment creditor who had the responsibility to prepare the writ, have it entered by the court clerk and see that it was delivered to the sheriff with instructions as to levying. *Id.* at 519–20, 446 A.2d 88. The court explained that:

shall be returnable 12 months after the date

if necessary, plaintiff should conduct discovery to locate and identify property to be levied upon.... The writ is in the 'exclusive control' of the judgment creditor; the sheriff must follow the creditor's reasonable instructions regarding the time and manner of making the levy and must abide by special instructions to make an immediate levy, if practicable, when plaintiff demonstrates necessity.

*Id.* at 520, 446 A.2d 88. One issue in *Vitale* was whether successive levies could be made under one writ. The plaintiff's attorney had sent to the sheriff a writ of execution to levy on monies and personal property at The Fast Lane, a bar. When the deputy sheriff went to the bar, accompanied by a local police officer, he was denied access by one of the bar's bouncers after he identified himself and announced his purpose. *Id.* at 516, 446 A.2d 880. After being told by the deputy sheriff that a court order would be necessary to gain access, the plaintiff's counsel applied for and received a court order that the sheriff be permitted access to the bar and to arrest anyone who interfered with the levy. *Id.* at 516–17, 446 A.2d 880. The sheriff then levied and seized some cash and personal property, but it was insufficient to satisfy the entire judgment. *Id.* at 517, 446 A.2d 880. When the plaintiff's attorney instructed the deputy sheriff to make further levies until the writ was satisfied, he was informed that it was the sheriff's contention that only one levy could be made under the writ of execution. The court noted that, "the rule that further levies under one writ are authorized under the same writ before the return day if the initial levy does not satisfy the judgment is recognized universally." *Id.* at 520, 446 A.2d 880.

The court in *Vitale* also addressed the issue of what physical force was necessary in making a levy. The court noted:

the general rule is that:

... [an] officer may force an entry into any enclosure except the dwelling house of the judgment debtor in order to levy a fieri facias on the debtor's

of its issuance...."

goods and even in the case of the debtor's home, when the officer is once inside, he may break inner doors or trunks to come at the goods. [33 C.J.S. Executions § 96 at 242].

184 N.J.Super at 523–24, 446 A.2d 88. Another case which discusses making a levy of personal property at the judgment debtor's residence is *Spiegel, Inc. v. Taylor*, 148 N.J.Super. 79, 371 A.2d 838 (Bergen County Ct.1977). In that case, the judgment creditors moved for an order allowing a constable to enter the judgment debtor's residence to effectuate an inventory on personal property and levy upon same. The court held that such blanket permission to a constable would not be granted since less drastic methods were available. It held the proper procedure was for the creditor,

> to ascertain the existence of any assets owned by defendants through the supplementary proceedings authorized by R. 6:7–2, or other legitimate investigative techniques and then to instruct the constable to levy upon the discovered assets. If this entails a levy in defendant's dwelling house and entry is refused, applicaiton can be made to the court at that time—but the court will not grant a constable permission to make a general (and perhaps fruitless) search of a debtor's home without the showing of some reasonable basis for the request (analogous to probable cause for a search warrant).

148 N.J.Super at 84. The court in *Spiegel* noted the creditor had not identified any particular non-exempt personal property in the debtor's home upon which it wished to levy and it was not the officer's duty to search out the judgment creditor's assets. *Id.* at 83–84, 371 A.2d 838. In *Spiegel*, the

constable had simply stated in his affidavit that he was unable to levy on any personal property. *Id.* at 82, 371 A.2d 838.

In *Matter of Blease*, 605 F.2d 97 (3d.Cir.1979), the court dealt with the status of a trustee in bankruptcy as a hypothetical judicial lien creditor under § 70(c) of the former Bankruptcy Act, 11 U.S.C. § 110(c).[4] In *Blease*, the State of New Jersey had claimed a lien for unpaid taxes on real property of the debtor. Certificates of debt had been docketed with the Clerk of the Superior Court of New Jersey but there had not been a levy prior to the filing of the debtor's Chapter XII petition. The Third Circuit noted that under New Jersey law, a judgment creditor with a levy had priority over a non-levying judgment creditor. *Id.* at 98.

Under § 70(c) of the Bankruptcy Act, the trustee had rights equivalent to those of a judgment creditor who had levied; therefore, the Third Circuit upheld the lower courts' rulings that the state's lien was invalid against the trustee in bankruptcy. *Id.*

The court in *Blease* discussed the rights of a judgment creditor in New Jersey. It noted that the docketing of a judgment in the Superior Court of New Jersey creates a lien upon the judgment debtor's real estate from the date the judgment is docketed. *Id.* The court observed that, "a writ of execution is the procedural tool enforcing a judgment; it does not create the lien." *Id.* However, to secure a lien on personalty, a judgment creditor must levy. *Id.* at n. 2. A levy relates back to the date the writ of execution is delivered to the sheriff. *Id.* In *Blease*, the State of New Jersey did not claim any status above that of a judgment

---

**4.** Section 70(c) of the Bankruptcy Act provides in part:

> (c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bank-

> ruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

creditor and conceded that its lien would not take priority over a judgment creditor who had levied. *Id.* The state argued, however, that the trustee's § 70(c) position did not give him the status of a judgment creditor who had levied. The *Blease* court noted:

> It has been the past practice of the bankruptcy courts in New Jersey to accord the trustee the rights of a levying judgment creditor under § 70(c). [citations omitted]. This interpretation is designed to enhance the trustee's ability to provide for the equal distribution of assets among the bankrupt's creditors, which is one of the primary purposes of the Bankruptcy Act in general and of § 70 in particular [citations omitted].

*Id.* at 99. The court reasoned that under New Jersey law, the state's lien would not be perfected until the state proceeded to levy on the debtor's property. *Id.* at 100. It concluded that:

> If these steps are not taken by the time a bankruptcy petition is filed, the judgment creditor is vulnerable to the trustee's § 70(c) powers just as he is vulnerable to a subsequent judgment lienor who levies on the debtor's property.

*Id.*

Section 70(c) of the Bankruptcy Act was the forerunner of § 544(a) of the Bankruptcy Reform Act of 1978 as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Bankruptcy Code).[5] Section 544(a) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Title 11 U.S.C. § 544(a).

Cases construing § 544(a) reveal that the reasoning of the *Blease* court is still valid. For instance, in *Matter of Feldman*, 54 B.R. 659 (D.N.J.1985), the debtor incurred sizable debts prior to the bankruptcy and several of her creditors obtained judgments in the state courts. With the exception of one creditor, however, all judgments were not executed upon. The debtor applied to the bankruptcy court to sell a parcel of property with the provision that the proceeds of sale would be subject to liens. The sale was consummated and the balance of proceeds, after the payment of certain court ordered disbursements, was deposited in an interest bearing account. Subsequently, the debtor moved before the bankruptcy court to invalidate certain liens encumbering the debtor's real property which the holders thereof had not executed upon. The lienholders opposed the motion and sought validation of their liens. *Id.* at 660. The court held that these liens were subject to the avoiding power of the trustee under § 544. The *Feldman* court discussed the nature of the trustee's powers under § 544:

> Section 544 of the Bankruptcy Code provides, in pertinent part, that a trustee

---

**5.** This case is governed by the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984.

shall have, as of the commencement of a case, the same avoiding power as does a creditor possessing an unsatisfied execution against the debtor, regardless of whether such a creditor actually exists. 11 U.S.C. § 544(a)(2). Section 544 is known in its entirety as the "strong-arm clause" of the Code because of the avoidance power it granted to the trustee. H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The statute effectively transforms the trustee into "the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor." *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss. 1932). *See also 4 Collier on Bankruptcy para. 544.02* (15th ed. 1979). This concept of the trustee as the 'ideal creditor' is controlling in this jurisdiction. *In re Matter of Kravitz*, 278 F.2d 820, 822 (3d Cir.1960); *In the matter of Lea Fabrics, Inc.*, 226 F.Supp. 232, 235 (D.N.J. 1964); *In the Matter of Callahan Motors, Inc.*, 396 F.Supp. 785, 791 (D.N.J. 1975).

54 B.R. at 660. *See also In re Kambourelis*, 8 B.R. 138 (Bkrtcy.N.D.N.Y.1981); *In re Wilson*, 38 B.R. 940 (Bkrtcy.W.D.Ky.1984). The court in *Feldman* noted that under New Jersey law, "a writ of execution is not binding until delivered to the sheriff. N.J. S.A. § 2A:17–10 (West). Creditors hold no power absent of a levy of their executions upon the secured property." 54 B.R. at 660.

■ In the present case it is clear that as of the date of filing of the debtor's Chapter 7 petition the trustee holds the status under § 544 of a hypothetical judicial lien creditor who has levied upon the debtor's property. As such, the trustee's lien could only be defeated by a judgment creditor holding a valid lien who had *properly* levied. Under New Jersey law, the creditor in this case has not perfected his lien to the fullest extent possible since the levy on the debtor's real estate was improper. N.J.

S.A. § 2A:17–1 clearly requires that a good faith effort be made by a judgment creditor to levy on personal property before a levy is made on real estate. This is mandated also by New Jersey case law since the statute is in derogation of common law and must be strictly construed.

The district court in *Matter of Silverman* noted that to engage in the discovery provided by the New Jersey Court Rules after obtaining a writ of execution but before delivering it to the sheriff with instructions as to the property to be levied upon was consistent with sound legal practice. 6 B.R. at 996. Although the district court in *Matter of Silverman* noted that neither N.J.S.A. § 2A:17–1 nor *Raniere* appear to require a physical inventory of personal property by the sheriff, there is required a "strict and deligent search." 6 B.R. 996 at n. 9. Moreover, the question to be determined is whether the creditor under *Raniere* made a "good faith attempt to locate, levy upon and execute against personalty of the judgment debtor." 6 B.R. at 996.

In the present case, some limited discovery was made of the debtor's assets. The November 30, 1984 examination of the debtor was conducted by Barry N. Shaw, Esquire, attorney for Palese. The debtor was questioned regarding her assets. The debtor was questioned regarding sources of income, business interests, savings accounts or other bank accounts, stocks, bonds, securities, certificates of deposit, real property, motor vehicles, boats, aircraft, firearms, coin or stamp collections, painting or art objects, jewelry, safe deposit boxes, interests in patents or copyrights, insurance policies, property held in trust, inheritances, and proceeds from casualty losses. (Answer of Palese Exhibit "G").

The debtor stated that she had income from a part-time job, a pension from the State of New Jersey, and social security benefits. She stated that she had a stock interest in Fait Inc. The debtor stated that she had no savings account or other stocks or bonds. She also stated that she owned

the subject real estate at 825 Mercer Street, Cherry Hill, New Jersey, where her personal residence was situate, real estate known as 5905 Central Avenue, Sea Isle City, New Jersey, with a house situate thereupon, a vacant lot at 5903 Central Avenue, Sea Isle City, New Jersey, and a condominium at 926 Society Hill, Cherry Hill, New Jersey. The debtor stated in that deposition that she owned two automobiles, a boat, certain insurance policies, and a limited amount of jewelry.

Missing from the deposition were questions regarding the debtor's ownership of furniture, appliances, and other household goods.

■ Perhaps more critically, no listing of personal property to be levied was transmitted by Palese to the sheriff. Since the sheriff was refused entry to the debtor's home, the creditor moved in state court for an order allowing the sheriff to break the locks, as required by law. The fact that the sheriff was denied access to the debtor's residence by the debtor's son for purposes of performing the personal property levy cannot validate the levy on the debtor's real property made that same date. The court in *Spiegel, supra,* clearly disfavored allowing an officer *carte blanche* to enter a debtor's residence and levy on any property. The creditor here did not make a good faith effort to locate, levy upon and execute against the debtor's personal property and was not justified in simultaneously levying upon and executing against the debtor's real property. Although the creditor herein was in the process of applying for an order to gain entry, the filing of the bankruptcy petition preceeded the possible granting of any such order. The date of filing of the bankruptcy petition establishes the rights of the trustee as a hypothetical judicial lien creditor with a superior lien over any judgment creditor who has not *properly* levied.

Finally, the creditor's reliance on 11 U.S.C. §§ 546(b) and 362(b)(3) to validate his lien is misplaced.

Section 546(b) provides:

(b) the rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

Section 362(b)(3) also provides:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.

These sections limit the trustee's rights and powers under 11 U.S.C. § 544 and permit the post-petition perfection of certain liens to be effective against the trustee where under applicable non-bankruptcy law that interest holder could have perfected its rights against an entity subsequently acquiring rights in the property if bankruptcy had not intervened. *See Matter of Valairco, Inc.,* 9 B.R. 289 (Bkrtcy.D.N.J. 1981). In *Valairco, supra,* certain creditors who were subcontractors and suppliers of the debtor had filed "stop notices" pursuant to N.J.S.A. 2A:44–77 after the date of the filing of the debtor's Chapter 11 petition. The Bankruptcy Court denied the creditors' application to modify the automatic stay to permit perfection of their lien on certain construction funds, finding that under the applicable state statute, perfection of this lien would only occur on the date that the original stop notice was filed

and not relate back to a date before the bankruptcy petition was filed when the materials were supplied or the services rendered. 9 B.R. at 294–95. Sections 546(b) and 362(b)(3) of Title 11 find their application in cases where for example under Section 9–301(2) of the Uniform Commercial Code perfection of a purchase money security interest within ten days of its making will relate back to defeat an earlier perfected non-purchase money security interest if the former was perfected within ten days, or where in the case of the holder of a mechanic's lien, applicable state law permits perfection to relate back as to defeat an intervening lien creditor. *See* 4 Colliers on Bankruptcy para. 546.03[2] (15th ed. 1985). In the instant case, the improper levy cannot be perfected or cured by any post-petition act under applicable state law, since the execution against the real property is void, not merely voidable by the Trustee. *See Raniere,* 159 N.J.Super. at 337, 387 A.2d 1254.

In this case, therefore, the lien of Vincent J. Palese is declared void as against the Trustee's interest in the real estate of the debtor at 825 Mercer Street, Cherry Hill, New Jersey. Mr. Palese's status is that of a mere judgment creditor, unsecured and subordinate to the rights of the Trustee as a judicial lien creditor under 11 U.S.C. § 544(a).

An order shall be submitted in accordance with this decision.